**Russell LEACH**

v.

**MON RIVER TOWING, INC., et al.**

v.

**CAMPBELL BARGE LINES, INC.**

Civ. A. No. 72-1084.

United States District Court, W. D. Pennsylvania.

July 10, 1973.

Hymen Schlesinger, Pittsburgh, Pa., for plaintiff.

Frederick Egler, William Walker, Robert Wayman, Stephen Graffam, Pittsburgh, Pa., for defendant.

## MEMORANDUM

SNYDER, District Judge.

Russell Leach filed a complaint against Mon River Towing, Inc., Hillman Transportation Company, and Sinclair-Koppers Company alleging that as an employee of Campbell Barge Lines, Inc. performing his assigned duties as a deckhand, he was injured and thrown to the bottom of an empty barge. He alleged varying types of negligence against the parties. Sinclair-Koppers filed an answer; Hillman Transportation Company answered and filed a third party complaint against Campbell Barge Lines alleging that the unseaworthy condition and negligence was that of Campbell and asked for indemnity as to any amounts shown to be owed by Hillman. Mon River answered the original complaint, alleging *inter alia* that:

"3.  Plaintiff on December 4, 1972, settled his claim against Campbell Barge Lines, Inc., plaintiff's employer, for damages allegedly arising out of the accident of December 20, 1970, which is alleg-

edly the basis for the present action."

"4. As plaintiff's employer was discharged from any liability under Jones Act, General Maritime Law and for maintenance and cure, plaintiff can have no recovery from this defendant."

All defendants, including the third party defendant Campbell Barge Lines, Inc. filed motions for summary judgment. Briefs were submitted and oral argument on these motions was heard.

Defendants, Mon River Towing, Inc. and Sinclair-Koppers Company, seek summary judgment on the grounds that since plaintiff executed a release with Campbell Barge Lines, Inc. at Civil Action No. 71–994, the release of the one party should release all parties. Defendant Hillman makes the same argument but also states that if such were not true, third party defendant Campbell would be liable to defendant Hillman for indemnity for any judgment entered against them.

Third party defendant Campbell seeks dismissal of the third party complaint and/or summary judgment on the grounds that the release executed by Leach exempts defendant Campbell from any further liability.

### MOTIONS FOR SUMMARY JUDGMENT

Re: *Mon River Towing, Inc.*
*Sinclair-Koppers Company*
*Hillman Transportation*

At oral argument the above named defendants placed great reliance on the case of Cates v. United States, 451 F.2d 411 (5th Cir. 1971). The facts in the Cates case are: Frank W. Cates brought suit against the United States and Reynolds Submarine Services Corporation, his employer, (Reynolds), for injuries suffered while leaving the USS NIMBLE and getting into a whaleboat alongside for transportation back to the quartering vessel. On the eve of trial, Cates settled his claim with Reynolds and executed a release in their behalf and their vessels. The United States argued that failure to reserve rights against it expressly in the release operated to absolve the United States from liability. The United States in *Cates* relied on the general common law rule that the release of one joint tortfeasor operates to release all tortfeasors unless the written instrument contains an express reservation of rights against others. In a footnote in the *Cates* case the Court stated the various rules governing releases.

"The three rules identified are: (i) The ancient common-law rule that a release extinguished the cause of action to which it related, regardless of the wording or attempted reservation of rights; (ii) The First Restatement of Torts rule that a release releases all parties except those against whom rights are expressly reserved; and (iii) the Restatement Second approach that the effect of the release is governed by the intentions of the parties. [Zenith Radio Corp. v. Hazeltine Research, Inc.] 401 U.S. [321] at 343, 91 S.Ct. [795] at 808 [28 L.Ed.2d 77]."

The Supreme Court in Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1970), and in Aro Mfg. Co. v. Convertible Top Replacement Co. (1964), 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457, held that the intentions of the parties to a release governed in an anti-trust case (Zenith) and in a patent case (Aro). In *Aro, supra,* the Supreme Court specifically rejected the old common law rule and refused to find that the joint tortfeasor was released. We see no reason for not applying the *Aro* rationale to the instant motions. The applicable rule then is that the effect of the release is to be determined by the intentions of the parties involved in such a release. See also: M. Sobel Inc. v. A. H. Robins Company, 446 F.2d 546 (2nd Cir. 1971); Ruskay v. Jensen, 342 F.Supp. 264 (S.D.N.Y.1972); Mustang Oil Company v. Crown Central Petroleum Co., 52 F.R.D. 207 (W.D.N.C.1971).

The important reference to the release in *Cates* included the following:

"It was in sweeping terms as to those protected. But these were limited to 'Reynolds \* \* \* and/or its underwriters and their heirs, executors, administrators, successors and assigns, and their several vessels and \* \* \* the vessel submarine Aluminaut and/or the M/V Privateer and the owners, agents, operators, charterers, masters, officers, and crews, of said vessels \* \* \*.'"

Cates signed the following:

"Do you know that your rights include not only a right to sue for and recover maintenance, cure, and wages, but, also, a right to sue for and recover damages if you can prove that your illness and/or injuries were caused by negligence or by something wrong (unseaworthiness) with the vessel or vessels to which your rights relate; and that you can have your own lawyer advise you further on your rights should you wish to engage [one] before you sign this if you have not already done so."

In two places, the release stated that Cates was giving up every right he had in the following terminology:

"BY SIGNING THIS YOU GIVE UP EVERY RIGHT YOU HAVE."

"IT IS A RELEASE. I AM GIVING UP EVERY RIGHT I HAVE."

The Court then held that the effect to be given the release is to be determined by the intentions of the party involved in such a release. Viewing the release in its entirety, the Court held that Cates intended to release Reynolds only.

■ In our present situation, the pertinent parts of the settlement transcript in the action of Leach v. Campbell Barge Lines, Inc., at Civil Action No. 71–994, includes the following:

"MR. SCHLESINGER:

May it please the Court, after some negotiations back and forth the parties have agreed upon a compromise settlement in the amount of $4500., which will be in complete satisfaction and discharge of all claims which the plaintiff has as set forth in the complaint at Civil Action No. 71–944 (sic) (correct number is 71–994), including the liability for negligence under the Jones Act, unseaworthiness under the maritime law, and for maintenance and cure, past, present and future." (Tr. pp. 1 and 2).

MR. SCHLESINGER TO MR. LEACH:

"Q. Now, do you understand that this will release all claims that you have against the defendant as recited in this case involving these two accidents and maintenance and cure, past, present and future?"

"A. I do, sir."

"Q. Are you agreeable to the settlement?"

"A. Yes, sir."

"Q. Have I advised you of your rights in the matter, all your legal rights?"

"A. Yes, sir." (Tr. pp. 4 and 5).

MR. WAYMAN TO MR. LEACH:

"Q. You understand, Mr. Leach, that this concludes every claim you have against Campbell Barge Lines?"

"A. Yes, I do."

"Q. Jones Act, maintenance and cure?"

"A. Yes, sir." (Tr. p. 5).

"THE COURT:

You understand this concludes everything? Very well, I will approve the settlement and the request for counsel fees will also be approved. You may step down, Mr. Leach." (Tr. p. 6).

After review of the transcript at Civil Action No. 71–994 and the applicable law, we conclude that Russell F. Leach intended to release Campbell Barge Lines, Inc. but none of the original de-

fendants in this action. Therefore, the motions for summary judgment filed by Mon River Towing, Inc., Sinclair-Koppers Company, and Hillman Transportation Company are denied.

## MOTION FOR SUMMARY JUDGMENT

Re: *Campbell Barge Lines, Inc.*

Campbell Barge Lines, Inc. was joined in this action as a third party defendant by Hillman Transportation Company, who charged Campbell with negligence, and/or with causing an unseaworthy condition, and/or with failure to furnish a safe place to work.

In order to properly analyze the situation, a reference is necessary to the facts disclosed by the various pleadings. The plaintiff, Russell Leach, was alleged to be a seaman in the employ of Campbell Barge Lines, Inc. On December 20, 1970, in his capacity as a deckhand, he was thrown into the bottom of a barge and sustained severe injuries to his back and legs. At the time of the accident Mon River Towing, Inc. was the charterer of the towboat and barge, which barge was owned by Hillman Transportation. The barge had been ordered by Mon River Towing to move from Point Marion to the Kobuta Plant of Sinclair-Koppers Company, to be unloaded. The transportation was carried out under a contract between Hillman Transportation and Mon River Towing Company and provided for the towing of loaded and empty barges by Mon River for Hillman. Barge Number H–1447 was being moved under the terms of this transportation contract. The barge had been loaded with coal at Point Marion and was picked up on December 13, 1970 and placed in the tow of the vessel "Jesse B. Guttman", operated by Mon River, and placed at the West End Landing in Pittsburgh on December 14, 1970. On December 14, 1970 it was placed in the tow of the vessel "Louise H.", operated by Campbell for Mon River, and was delivered to the Kobuta Plant on December 15, 1970. On December 20, 1970, the empty barge was picked up at Kobuta Plant by the vessel "Louise H.", operated by Campbell for Mon River Towing, and delivered to the Warwick Mine of the Duquesne Light Company on December 21, 1970.

The complaint shows that the accident to the plaintiff occurred while the barge was in tow of the vessel "Louise H." as it was approaching Jacks Run Landing.

The original complaint alleged that the barge struck a moving or stationary object or was caused to collide with the landing, causing the plaintiff to be thrown to the littered and slippery deck and gunnel of the barge, and to be thrown to the bottom of the barge resulting in the injuries as set forth.

The complaint to join the additional defendant filed by Hillman Transportation Company asserted liability in the third party complaint on the basis of negligence and unseaworthiness. The original complaint had alleged, as was previously indicated, negligence and/or unseaworthiness.

The problem arises as to Campbell asserting now that the record of the proceeding at Civil Action Number 71–994, in which it was the defendant in the direct suit of its employee Leach and which was settled, as previously indicated, provides the basis for its dismissal on a motion for summary judgment in this proceeding. If the plaintiff proved liability solely on the theory of negligence, then the parties are all entitled to look to the law of the state in which the action is being tried—here, the law of Pennsylvania. This, in and of itself, is not free of difficulties as is rather fully discussed in the case of Mazer v. Lipshutz, 360 F.2d 275 (3 Cir. 1966).

In the Mazer case, a medical mal-practice action was brought against Doctor Lipshutz as the surgeon, and against Doctor Lipshutz as the Master of Kohn, the anesthesiologist. The jury found a verdict against Doctor Lipshutz for $89,318.00, and a verdict for the same amount in favor of Lipshutz and against Kohn for the administration of

the wrong type of blood. A release and covenant not to sue had been given by the hospital and its employees for $60,000.00. On defense motions, the judgments were reduced by the $60,000.-00 paid by the hospital. The plaintiff appealed from the reduction of the amounts of the judgments and Lipshutz and Kohn appealed from an order refusing to grant judgment n.o.v. The court considered that the substantial question involved was whether the release the plaintiff gave the hospital merely reserved a right against Doctor Lipshutz for individual negligence and, thus, excluded the vicarious liability of Doctor Lipshutz as the Master. The release given to the hospital was under the Contribution Among Tort Feasors Act (12 P.S. §§ 2082–2089) and released the hospital from all claims arising out of the injury sustained by the plaintiff decedent. There was an express reservation of the right to make claims against every other person other than the hospital, specifically reserving the rights against Doctor Lipshutz and all others. The court, in brief, held that the true meaning of the release was that it only excluded the liability of the hospital and not any claims against Doctor Lipshutz, including the vicarious liability. The court went on to discuss the problem with respect of the effect of the tort feasor act and its discussion is very pertinent here and, therefore, will be quoted at some length. Preliminarily it is our conclusion, based on the following quoted discussion, that Campbell Barge Lines, Inc., in our situation, bought its peace with Leach under the Pennsylvania law that even if there were joint tort feasors, the claim against the other tort feasor would be released only to the amount of the consideration paid and if, in fact, Campbell was a joint tort feasor then the defendants received no benefit of the settlement but, in any event, Campbell can not at this point be granted summary judgment.

■ Now, returning to *Lipshutz*, the court stated as follows:

"On behalf of Lipshutz it is argued that the Uniform Contribution Among Tortfeasors Act of July 14, 1951, P.L. 1130 (12 P.S. 2082), makes the deduction mandatory of the money paid by the hospital for the release to it. Reliance is placed on Sections 1 and 4 of the Act which read:

Section 1:

'For the purposes of this act, the term "joint tortfeasors" means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.'

Section 4:

'A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.'

"The obvious difficulty with the Lipshutz theory is that admittedly there has been no judicial determination as to the alleged negligence of the hospital. Pennsylvania case law is specific in upholding this sine qua non requirement. In Davis v. Miller, 385 Pa. 348, 123 A.2d 422 (1956) which is the landmark Pennsylvania decision on the subject, there was a collision between an automobile operated by Mary Richardson and one driven by Amos Miller. Three passengers in the Richardson car sued Miller. The latter sued the Richardson driver and made her an additional defendant. It developed that Mary Richardson had a release from Miller and releases from her passengers. She moved for judgment on the pleadings. The court sustained this and discharged her from the case. Miller

appealed. As the Supreme Court stated p. 349, 123 A.2d p. 423:

'It is appellant's contention that notwithstanding the releases held by the additional defendant she should be retained in the case until a jury can determine whether or not she was a joint tortfeasor.'

"The Court functioning specifically under the above quoted Uniform Contribution Among Tortfeasors Act quoted inter alia the provision relied on here, saying pp. 351–352, 123 A.2d p. 424:

'All the releases from the plaintiffs to the additional defendant were given in pursuance of that Act, and they each provided "That any damages, recoverable by the Undersigned, against or from all the other joint tortfeasors, shall be reduced to the extent of the pro rata share of said damages which the parties released hereby, except for this release, would otherwise have to pay." It is therefore clear that an important factor in the determination of the amount of damages that Miller may be required to pay to plaintiffs is whether or not Mary Richardson would also have been liable to them had they not released her, —in other words, whether she was a joint tortfeasor with Miller. If such she was, then, under the Act and the terms of the releases which plaintiffs gave her, they can recover from Miller only his pro rata share, in this case half, of the amount to which they otherwise would have been entitled; if, on the other hand, she was not a joint tortfeasor, the releases given her by plaintiffs would not inure to Miller's benefit. Koller v. Pennsylvania Railroad Company, 351 Pa. 60, 40 A.2d 89. Therefore, although Miller cannot recover contribution from the additional defendant, he does have an extremely valuable right in retaining her in the case, because, if the jury should find her to be a joint tortfeasor, his liability to plaintiffs would be cut in half. Her continuance in the case is therefore necessary, even though no recovery can be had against her either by plaintiffs or by defendant, in order to determine the amount of damages that defendant may be obliged to pay plaintiffs in the light of the situation created by their releases of the additional defendant's liability.'

"To the same effect Long v. Thomasberger, 14 Pa.Dist. & Co.R.2d 30 (1958); Dice v. Marsolino, 14 Pa.Dist. & Co.R.2d 457 (1958). See also Polley v. Atlantic Refining Co., 417 Pa. 549. 556–557, 207 A.2d 900 (1965).

"The defendant makes no real attempt to refute the solid law of the Davis opinion and the decisions following it. Daugherty v. Hershberger, 386 Pa. 367, 126 A.2d 730 (1956) is cited by defendant but the opinion written by Chief Justice Stern, the author of the Davis opinion, recognizes the authority of the latter and simply holds that it 'has no bearing upon the present issue.' Brown v. City of Pittsburgh, 409 Pa. 357, 363–364, 186 A.2d 399, 403 (1962) also referred to by the defense, is of material help to the plaintiff. Its finding was: 'Therefore, if any judgment is recovered against the City, *which will establish the fact that the Church was negligent and a wrongdoer,* albeit, one protected by an immunity from liability for its negligence, credit must be given for the sum already paid.' (Emphasis supplied). As has been noted the hospital involved in the instant claim was not a party to the pending cause and there is no judicial judgment of negligence against it. Pillo v. Reading Co., 232 F.Supp. 761 (E.D.D.C.Pa.1964), the remaining citation of the defense, holds that 'It is hornbook law *that a satisfied judgment against one co-obliger or joint tortfeasor bars suit against others jointly responsible for the same injury.'* (Emphasis supplied). This

merely lends strength to the rightness of the Mazer plaintiff's full recovery of his judgment. The amount paid by the hospital was the ordinary buying of peace on the part of one concerned in a person's claim for damages arising out of an alleged tort. It was not the act of a tortfeasor, so established by a judgment against it which it has paid and satisfied."

The net effect of the reasoning of the Third Circuit in the Mazer case is, as it applies to the instant situation, that Campbell Barge Lines, at this point, is not entitled to its motion for summary judgment.

If the attempt by the third party plaintiff here is to hold in the third party defendant on plaintiff's proof of violation of the general maritime law, then the question of the effect of the release will be determined by the application of federal law and not state law. This distinction is borne out in the following decision: Canillas v. Joseph H. Carter, Inc., 280 F.Supp. 48 (S.D.N.Y.1968) where there was an action for wrongful death of a seaman lost on the high seas and a release had been given to the alleged joint tortfeasor and the release contained no reservation of rights against the alleged joint tortfeasor. (Canillas v. Joseph H. Carter, Inc., *supra*, at p. 51). While there are no Supreme Court cases dealing specifically with the application to seamen, the court has expressed its views on this subject in other types of cases, such as in Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 84 S.Ct. 1526, 12 L. Ed.2d 457 (1964), (patent infringement), to the effect that the release of one tortfeasor releases all unless the release expressly reserves the right against the other joint tortfeasor. This rule has further been applied in civil anti-trust suits. See Dura Electric Lamp Co. v. Westinghouse Electric Corp., 249 F.2d 5 (3d Cir. 1957). In the Dura case, General Electric was sued by the plaintiff and paid $50,000.00, receiving a general release. Subsequently, plaintiff sued Westinghouse Electric and named General Electric and Corning as co-conspirators, but not naming them as defendants. The sole question for decision was whether the General Electric release barred the action against all the other co-conspirators. Applying federal law, the release was construed to release all the joint tortfeasors. Some hesitancy was expressed, but the rule was stated to be that the "release of one tortfeasor is a release to all". The court did indicate that the release would not have such effect if the plaintiff expressly reserved his right against the others. Cf. Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 91 S.Ct. 795, 28 L. Ed.2d 77 (1970). (Anti-trust).

So in the instant situation, the third party defendant Campbell Barge Lines' motion for summary judgment must be dismissed without prejudice to their right to raise a similar motion depending on the state of the pleadings or proof of the plaintiff vis-a-vis the third party plaintiff, and the third party plaintiff vis-a-vis the third party defendant.

An appropriate order will be entered.