Chester DOBBINS

v.

CRAIN BROTHERS, INC.

v.

PITTSBURGH & LAKE ERIE
RAILROAD COMPANY.

Civ. A. No. 75–99.

United States District Court,
W. D. Pennsylvania.

Dec. 13, 1976.

Paul L. Hammer, Pittsburgh, Pa., for plaintiff.

John R. McGinley, Jr., G. Edward Yurcon, Pittsburgh, Pa., for defendant.

## OPINION

KNOX, District Judge.

The facts of this case are simple. The plaintiff slipped and fell upon ice and snow on the deck of the defendant's barge sustaining serious injuries. However, careful consideration of the legal issues arising from this injury leads the court to agree with Judge Friendly's observation that admiralty law constitutes a "wonderland"[1] and with the observation of Judge Teitelbaum of this court that this area of the law is riddled with a "byzantine maze of excep-

1. *McLaughlin v. Trelleborgs Angfartygs A/B*, 408 F.2d 1334 (2d Cir. 1969).

tions and fine distinctions".[2] The court initially notes that most of the discussion in this opinion will not apply to accidents occurring after the effective date of the 1972 amendments to the longshoreman's and harbor workers compensation act which eliminated the doctrines of unseaworthiness and indemnity in admiralty cases. (33 U.S.C. § 901 et seq. as amended 1972).

The plaintiff in this case was an employee of the third party defendant, the Pittsburgh and Lake Erie Railroad Company (hereinafter R&LE). The P&LE was under contract with the Youngstown Sheet & Tube Company to unload coal at the Colonna dock, in the Ohio River near Monaco, Beaver County, Pennsylvania.

At about 7:30 a. m. on February 6, 1972, the plaintiff, a member of the P&LE's labor crew, was instructed by a superior to round two barges at the Colonna dock. "Rounding" is a process of manually shifting the positions of barges by letting the current take them around. It had been snowing since early that morning and several inches of snow had accumulated on the deck of the barge. Mr. Dobbins slipped and fell on the "gunnel" while in the process of rounding the barges.

On January 18, 1974, plaintiff filed suit against P&LE under the Jones Act at Civil Action Number 74–50 in this court. This lawsuit was settled on January 20, 1975, for $85,000. The release signed by the plaintiff and the P&LE is appended hereto as Appendix A and its effect will be discussed at length in parts one and two of this opinion, infra.

The present, the second lawsuit, was filed by the plaintiff on January 21, 1975, on the basis of unseaworthiness and the Jones Act. On May 13, 1975, a third party claim was filed against the P&LE by Crain Brothers seeking indemnification and/or contribution.

A four-day jury trial was held on plaintiff's second lawsuit on May 10 through 13, 1976. The court directed a verdict for Crain Brothers on the Jones Act issue be-

cause the record disclosed no evidence that the plaintiff was an employee of Crain Brothers. The rest of the case was submitted to the jury on the basis of a special verdict and the jury's findings have been appended hereto as Appendix B.

On May 14, 1976, in accordance with the verdict a judgment order was entered against the defendant in favor of the plaintiff in the amount of $240,000. (The $320,000 verdict minus $80,000 for the plaintiff's 25% contributory fault.) Motions for a new trial, for judgment NOV and to amend judgment were subsequently filed by Crain Brothers on May 21, 1976, and a motion to amend judgment as filed by the plaintiff on May 21, 1976. Different counsel now represents Crain Brothers.

The motions require the court to consider ten issues:

(1) Does the settlement of Civil Action No. 74–50 bar the present suit?

(2) If not a bar, should the settlement of Civil Action Number 74–50 offset the recovery in this case? If so, to what extent?

(3) Should the jury's finding that Crain Brothers breached a duty owed to the plaintiff to maintain a seaworthy vessel be upheld?

(4) If the plaintiff can recover against Crain Brothers pursuant to the foregoing questions, is Crain Brothers entitled to contribution from the P&LE?

(5) If the plaintiff can recover against Crain Brothers pursuant to the foregoing questions, is Crain Brothers entitled to indemnity from the P&LE?

(6) If Crain Brothers can recover from P&LE under Question 4 or 5, what is the proper amount of this recovery?

(7) Was the verdict of $320,000 excessive?

(8) Did the court err in admitting evidence of Crain Brothers insurance?

(9) What effect, if any, does the plaintiff's contributory negligence have on his total recovery?

**2.** *Saus v. Delta Concrete Company,* 368 F.Supp. 297 (W.D.Pa.1973).

(10) Finally, sorting out the answers to the above questions, what sums of money are due from Crain Brothers to the plaintiff and from the P&LE to Crain Brothers?

### (1) Bar by Previous Settlement.

In the case of *Leach v. Mon River Towing, Inc.*, 363 F.Supp. 637 (W.D.Pa.1973), Judge Snyder held that the effect of releases in the field of admiralty law must be governed by federal law. Judge Snyder further held that:

> "While there are no Supreme Court cases dealing specifically with the application to seamen, the court has expressed its views on this subject in other types of cases, such as in *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964), (patent infringement), to the effect that the release of one tortfeasor releases all unless the release expressly reserves the right against the other joint tortfeasor." 363 F.Supp. at 644.

The other major Supreme Court case in this area, other than *Aro*, discussed by Judge Snyder, is *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1970). In *Zenith*, the Supreme Court discussed three possible methods of interpreting releases. The "ancient common law rule, which was grounded upon a formalistic doctrine that a release extinguished the cause of action to which it related, was that a release of one joint tortfeasor released all other parties jointly liable, regardless of the intent of the parties." 401 U.S. at 343, 91 S.Ct. at 808, 28 L.Ed.2d at 95. The Supreme Court rejected this rule in *Aro* finding it to have "been repudiated by statute or decision in many if

not most states . . . and by the overwhelming weight of scholarly authority". 377 U.S. at 501, 84 S.Ct. at 1540, 12 L.Ed.2d at 477.

The two more modern approaches are that a release normally extinguishes the underlying cause of action unless the plaintiff expressly reserves his rights against others[3] or the viewpoint expressed by Judge Snyder in the *Leach* case that the intention of the parties governs without any presumptions as to the effect of a release.[4] 401 U.S. at 343, 91 S.Ct. at 808, 28 L.Ed.2d at 95. The Supreme Court applied the intention of the parties rule in *Zenith*, 401 U.S. at 345, 91 S.Ct. at 809, 28 L.Ed.2d at 96 to civil antitrust cases. See also opinion of this court in *Baughman v. Cooper Jarrett*, 391 F.Supp. 671 (W.D.Pa.1975).

■ The court has determined, as did Judge Snyder in *Leach,* that the more modern approach to determining the effect of releases, reflected in *Aro* and in *Zenith,* should be applied to admiralty cases. The court notes that injured seamen such as the plaintiff often suffer from a lack of education and may be unaware of their legal rights. Thus, there is even more reason to construe admiralty releases to protect the plaintiffs' rights than there is in the fields of antitrust and patent infringement, where the parties are more likely to possess equal bargaining power. The court also notes that while there are no Third Circuit cases on point, the Fifth Circuit has adhered to the intention of the parties' rule in construing admiralty releases in *Billiot v. Stewart Seacraft, Inc.*, 382 F.2d 662 (5th Cir. 1967).

The terms of the release in Civil Action No. 74–50, appended hereto as Appendix A,

---

**3.** This rule is contained in the Model Joint Obligations Act, 9B ULA 355, which has been enacted into law in at least four states with regard to tort claims. The Uniform Contribution among Tortfeasors Act, 9 ULA 233, reverses the presumption arising from the absence of an express provision in the release. It enacts that "a release by the injured person of one joint tortfeasor . . . does not discharge the other tortfeasors unless the release so provides . . . ." This is the law in Pennsylvania, 12 P.S. §§ 2082–2089 and in at least seven other states. Eleven other states have adopted some

other variation of this rule making a total of 21 states which support one form or another of a presumption. See Footnote 11 of the *Zenith* opinion.

**4.** This viewpoint was reflected in a tentative draft, Number 16, of the Restatement (Second), Torts # 885(1) (1970) and has been followed by a number of federal courts and state courts see cases cited in *Zenith,* 401 U.S. at 345, 91 S.Ct. at 809, 28 L.Ed.2d at 96.

clearly preserved the plaintiff's right to sue Crain Brothers. Thus, under either of the modern tests, discussed in *Zenith,* supra, the present suit should proceed in spite of the settlement of Civil Action 74–50. In addition, the right to sue Crain Brothers was discussed at the settlement hearing.[5] The intention of the parties on this point is therefore crystal clear, will be respected by the court and the defendant's motion for judgment on this ground denied.

### (2) Set Off of Prior Settlement.

■ A corollary to the two modern viewpoints about the effect of releases, discussed in *Zenith,* supra is that the plaintiff cannot receive a double recovery for the same injuries even if he is permitted to maintain more than one lawsuit. In the *Aro* case, the Supreme Court stated that:

> "Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment . . . ." Restatement of Torts, supra, § 885(3).
>
> "It has been said that 'all courts are agreed' upon such a rule." 377 U.S. at 503, 84 S.Ct. at 1541, 12 L.Ed.2d at 478.

In *Zenith,* the Supreme Court stated the rule to be that:

> "It is settled that, entirely apart from any release, a plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another conspirator; the law, that is, does not permit a plaintiff to recover double payment." 401 U.S. at 348, 91 S.Ct. at 811, 28 L.Ed.2d at 97.

■ The release, see underlined portion in Appendix A, discusses the matter of a set off in the suit against Crain Brothers but the intent of the parties as to its amount is ambiguous. The court interprets this portion of the release to mean that the parties intended for there to be an offset and listed two possible tests of the amount—either the amount of consideration, $85,000, or P&LE's pro rata share of any recovery against Crain Brothers under a joint tortfeasor theory.

In Parts 4 and 5 of this memorandum, infra, the court determines that P&LE is liable to Crain Brothers for ¾ of the total verdict. The two standards outlined in the release thus lead to different results under the facts of this case. The release contains no provision outlining how to deal with such conflict—such as to apply the greater amount. But in a personal injury case under admiralty law such as this and especially considering that the plaintiff is illiterate and probably did not possess equal bargaining power with the P&LE, the court will construe this ambiguous provision in favor of the plaintiff. Several principles of contract construction may apply to this release: contracts should be construed against the drafting party, *In re F. H. McGraw & Company,* 473 F.2d 465 (3d Cir. 1973), cert. den. 414 U.S. 1022, 94 S.Ct. 443, 38 L.Ed.2d 312 (1973), existing law is deemed to be part of a contract absent a contrary manifestation of intent. (The existing law under *Aro* and *Zenith* would provide for a set off of the first settlement only.), *Rehart v. Clark,* 448 F.2d 170 (9th Cir. 1971), and the courts have always reflected a high degree of solicitude for the rights of injured seamen, e. g. *Calmar S. S. Corp. v. Taylor,* 303 U.S. 525, 58

---

5. "The Court: Do you understand that if you should get worse in the future that you could not claim any additional amounts?

"The Witness: Yes, I understand.

"The Court: And that you would not be able to claim any additional amounts under any other laws such as the Jones Act for negligent injuries to seamen?

"The Witness: Yes.

"The Court: Do you want to say something about that?

"Mr. Hammer: Yes, I do, Your Honor. There is a possibility of a subsequent lawsuit against the barge owner, who I understand to be Crain Brothers. It is not the intention at this time to release that cause of action.

"The Court: Anyway, he will not be able to present any such claim against The Pittsburgh and Lake Erie Railroad.

S.Ct. 6511, 82 L.Ed. 943 (1938). *Harden v. Gordon,* Fed. Cas. No. 6047 (C.C.) (containing a classic passage by Mr. Justice Story about the duty of courts to protect seamen.) The court thus rules that the full amount of the $85,000 settlement—but not the total pro rata share of P&LE of the recovery in this case—must be set off against the plaintiff's recovery in this case. This approach is in line with *Zenith* and *Aro* in prohibiting a double recovery and also reflects the fairest reading of the intent of the parties in executing the release. This result also reflects the court's sense of justice and fair play. If no set off were permitted in this case, the plaintiff would be receiving $85,-000 in excess of what a jury determined to be the fair value of his damages. And to permit such a double recovery would be to approve a procedure whereby plaintiffs could attempt to escalate their damages by recovering the same items two times from two different parties. Such recoveries would constitute windfalls to injured seamen at the expense of shipowners and stevedores. On the other hand, to allow a set off of greater than $85,000 would give the plaintiff a total recovery less than the amount the jury determined to be the fair value of his injuries and would not reflect the fairest reading of the terms of the release.

The court has examined the case of *Pope & Talbot v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), cited by the plaintiff as allowing double recovery in this case. In *Hawn,* the plaintiff had received payments under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. from his employer, an independent contractor, for injuries received while repairing grain-loading equipment. In an action against the shipowner for unseaworthiness, the court, in an opinion by Justice Black, refused to permit a set off for prior compensation payments received from the independent contractor. However, this holding was premised on Section 33 of the L&HWCA which has "specific provisions to permit an employer to recoup his compensation payments out of any recovery from a third person negligently causing such injuries."[6] 346 U.S. at 412, 74 S.Ct. at 206, 98 L.Ed. at 152. The court also did not wish to frustrate the Act's purpose: "to protect employers who are subject to absolute liability by the Act".[7]

The *Hawn* case thus rests on the unique provisions of the L&HWCA. Civil Action 74–50 was brought under the Jones Act and other than some nominal payments before the suit was commenced,[8] the plaintiff has not sought nor received any compensation payments under the Act. The special considerations underlying *Hawn* thus do not apply here.

While there are no Third Circuit cases dealing with this precise issue, the result the court has reached is in accord with Judge Snyder's *Leach* case[9] and with the

---

**6.** "(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award." 33 U.S.C. § 933.

**7.** The liability of an employer prescribed in § 904 of this title shall be exclusive and in place of all other liability of such employer to the employee . . . . 33 U.S.C. § 905.

**8.** The settlement transcript at page two reflects that the plaintiff has received $560 in L&HWCA benefits.

**9.** Judge Snyder relied upon two landmark Pennsylvania cases in holding that a deduction should be made for an initial settlement against one joint tortfeasor. *Davis v. Miller,* 385 Pa. 348, 123 A.2d 422 (1956); *Daugherty v. Hershberger,* 386 Pa. 367, 126 A.2d 730 (1956).

The law in Pennsylvania used to be that a defendant's status as a joint tortfeasor could only be established by a judicial decision. Therefore, after the settlement, the plaintiff had to sue both tortfeasors and after the settling party's status as a tortfeasor was established in the second case, the deduction could be made. However, in *Mazer v. Security Insurance Group,* 507 F.2d 1338 (3d Cir. 1975), the court held that a defendant's status as a joint tortfeasor can be established by a provision in the release allowing for a set off in a subsequent lawsuit. The release in this case, See Appendix A contains such a clause.

Fifth Circuit opinion in *Billiot.* The defendant's motion to modify the verdict will therefore be granted so as to allow for a set off of the $85,000 settlement of Civil Action No. 74–50. The exact method of computing this deduction will be considered in the final section of this memorandum.

### (3) Unseaworthiness.

██ The court gave the following charge to the jury on the subject of unseaworthiness:

"Now the owner of a vessel in this case, I'm referring to Crain Brothers, has a duty to provide a vessel that is reasonably fit for its intended use. And this duty extends not only to the vessel, itself, but also to all of its parts and equipment. The duty to provide a seaworthy ship for persons working upon it is absolute. The owner may not delegate that duty to anyone, such as in this case, the railroad. If the owner does not provide a seaworthy vessel, then no amount of due care or prudence excuses him, whether he knew or could have known of the deficiencies. The duty to provide a seaworthy vessel requires that the vessel be reasonably fit for its intended purpose, and that the vessel, its gear, appurtenances and operation must be reasonably safe. (Trial Transcript at p. 195)

It is clear that the testimony showing the ice and snow on the deck of the barge was sufficient to support the jury's finding that the ship was unseaworthy. Further, it is irrelevant whether this condition was caused by Crain Brothers or by P&LE since the duty to maintain a seaworthy ship is absolute an nondelegable. In addition, there was a small amount of evidence of unseaworthiness independent of the slippery condition.[10] The defendant's motion for judgment NOV on the issue of unseaworthiness will therefore be denied.

### (4) Contribution.

██ The subject of contribution in admiralty cases is riddled with a maze of fine distinctions discussed by Judge Teitelbaum in the *Saus* case, supra. A discussion of the leading Supreme Court cases in this field is required to place the problem before the court in proper perspective.

Historically, the warranty of seaworthiness was owed only to the seaman.[11] However, in *Seas Shipping Co., Inc. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), the Supreme Court extended this warranty to longshoremen. And in *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), a warranty of seaworthiness was extended to other harbor workers.

The *Sieracki* and *Pope & Talbot* cases led to the situation now confronting the court where an injured harbor worker sues the shipowner for unseaworthiness who in turn joins the stevedore as a third party defendant seeking contribution and/or indemnity. (Indemnity will be discussed in the next part of this memorandum.)

The issue of contribution was first discussed by the Supreme Court in *Halcyon Lines v. Haenn Ship Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). In *Halcyon,* a ship repair employee was injured while repairing Halcyon's ship. He sued Halcyon for negligence and unseaworthiness who in turn impleaded Haenn the plaintiff's employer, seeking contribution.

The Supreme Court refused to permit contribution in *Halcyon.* The rationale of this holding needs to be considered in light of the following comment in *Cooper Stevedoring Company v. Kopke,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), the latest major Supreme Court case dealing with the subject of contribution in admiralty cases.

"Despite the occasional breadth of its dictum, our opinion in *Halcyon* should be read with this historical backdrop in mind. Viewed from this perspective, and taking into account the factual circumstances presented in that case, we think

---

**10.** Mr. Olejar testified, p. 72, Hillman barges are in a little better shape than Crain barges.

**11.** For further discussion see *Lucas v. "Brinknes" Schiffahrts Ges.,* D.C., 387 F.Supp. 440.

*Halcyon* stands for a more limited rule than the absolute bar against contribution in noncollision cases urged upon us by petitioner." 417 U.S. at 111, 94 S.Ct. at 2177, 40 L.Ed.2d at 700.

The historical backdrop of *Halcyon* was that the employee was covered by the exclusive remedy provisions of the L&HWCA. (See Footnote # 7) and

> "Confronted with the possibility that any workable rule of contribution might be inconsistent with the balance struck by Congress in the Harbor Workers' Act between the interests of carriers, employers, employees, and their respective insurers, we refrained from allowing contribution in the circumstances of that case." 417 U.S. at 112, 94 S.Ct. at 2178, 40 L.Ed.2d at 701.

In the *Kopke* case, the Supreme Court ruled that contribution was proper in admiralty cases except those based upon the facts of *Halcyon.* This rule advanced the public policy that:

> "[A] 'more equal distribution of justice' can best be achieved by ameliorating the common law rule against contribution which permits a plaintiff to force one of two wrongdoers to bear the entire loss, though the other may have been equally or more to blame." 417 U.S. at 111, 94 S.Ct. at 2177, 40 L.Ed.2d at 700.

At first blush, it appears to the court that *Kopke* rather than *Halcyon* applies to the facts of this case. Other than a nominal payment, the plaintiff never sought nor received L&HWCA benefits but rather brought his suit in Civil Action 74–50 on the basis of the Jones Act and unseaworthiness.

The recent case of *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), however, casts a different light upon the situation. In *Griffith,* the plaintiff was injured while loading a barge for his employer, the Wheeling Pittsburgh Steel Corporation. He sued both Wheeling and the vessel owner—American Commercial Lines, Inc.

On the contribution aspect of the case, the court ruled that:

> "If it should be determined that Wheeling's only negligence is that of employees performing stevedoring duties, there will be no joint tortfeasor liability. *Halcyon Lines v. Haenn Ship Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952); *Atlantic Coast Lines R. Co. v. Erie Lackawanna R. Co.,* 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972). We have held, however, that Wheeling may be held liable for negligence as a pro hac vice owner for non-stevedoring, 'owner' negligence. If both Wheeling, as pro hac vice owner, and American, as vessel owner, are found to be negligent, *joint tortfeasor contribution between them in this non-collision maritime case is available. Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974)." 521 F.2d at 44.

*Griffith,* therefore, appears to hold that in a case like this—where the defendants were solely performing stevedoring duties—contribution is foreclosed unless the stevedore is an owner pro hac vice. The *Griffith* opinion did not focus on the exclusiveness of the L&HWCA remedy and thus appears to take an expansive view of *Halcyon.* The jury in the case sub judice found, under careful instructions [12] that P&LE was not an owner pro hac vice. This finding had ample support in the record and will be upheld.[13]

**12.** We have the question here, and it is number two, was the P&LE Railroad the owner pro hac vice of this barge at the time plaintiff fell? Now this means that the owner of the vessel has given entire possession and control of it to another; in this case, the Pennsylvania Railroad. The person thus put in possession and control of the vessel becomes a special owner. Such a person is frequently described as the owner pro hac vice, which means merely a convenient expression to indicate that he stands in place of the owner for the voyage or service contemplated, and bears the owner's responsibilities, even though the latter here, Crain Brothers, remains the legal owner of the vessel.

**13.** The plaintiff, Mr. Dobbins, testified that he had never seen the P&LE ship any goods or cargo on Crain Brothers' barges or ever take a Crain Brothers' barge on a trip. (t. 107). Mr. Olejar, the P&LE assistant boat spotter at the

In spite of the breadth of the above cited dicta in *Griffith,* this opinion must be read in light of the *Kopke* decision. *Kopke* requires contribution in admiralty cases except those involving the same facts as *Halcyon.* As previously discussed, the rationale of *Halcyon* involves the exclusiveness of the L&HWCA remedy. And in part 2 of this opinion, on the set off issue, the court read *Halcyon* as precluding a set off only in situations where L&HWCA benefits were actually received. The same reasoning applies with equal force here and the court thus rules that *Griffith* and *Kopke*—read together—do not preclude contribution unless L&HWCA benefits have been actually received. Since L&HWCA benefits were not sought or received in Civil Action 74–50 and the plaintiff had previously received only a nominal payment, see Footnote # 8, the special consideration of the L&HWCA, discussed in *Kopke,* do not apply here and the court is free to fashion a rule of contribution.

### (5) Indemnity.

The ambiguity about the application of contribution principles to the facts of this case—arising from the broad language in *Griffith,* does not exist in the area of indemnity. This case falls squarely within the rationale of the major Supreme Court and Third Circuit cases on indemnity and Crain Brothers has a clear right to receive indemnification from P&LE.

The indemnity theory in cases of this type received its genesis in *Ryan Stevedoring v. Pan Atlantic S. S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In *Ryan,* the court found that the exclusive remedy provision of the L&HWCA did not bar the creation of an indemnity contract between a stevedore and a shipowner. Further, the court found such a warranty to be inherent in a stevedoring contract.

"Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product." 350 U.S. at 133, 76 S.Ct. at 237, 100 L.Ed. at 142.

Further refinement of the nature of this implied indemnity contract came in *Weyerhaeuser S. C. Co. v. Nacirema Operating Co.,* 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

"If in that regard respondent [the stevedore] rendered a substandard performance which led to foreseeable liability of petitioner [the shipowner], the latter was entitled to indemnity *absent conduct on its part sufficient to preclude recovery."* 355 U.S. at 567, 78 S.Ct. at 441, 2 L.Ed.2d at 494.

*Weyerhaeuser* did not delineate what type of conduct on the shipowner's part would preclude recovery from the stevedore. However, Judge Aldisert has recently dealt with this problem in *Humble Oil & Refining Co. v. Philadelphia Ship Main Co.,* 444 F.2d 727 (3d Cir. 1971).

"The reasonableness of the stevedore's actions must not be evaluated in isolation. Whether the shipowner has created conditions which so impede the stevedore's performance that his breach may be excused is a weighing process, . . . ."

The jury determined (see Appendix B) that P&LE was 75% to blame for the accident and Crain Brothers 25%. The court sees no conduct on Crain Brothers' part which precludes recovery under *Weyerhaeuser.* The barge was delivered to P&LE to unload Youngstown Sheet & Tube Company's coal. The ice and snow clearly fell

___

time of the accident, supported this testimony and further testified that he had never done repair work to a barge and that on occasion, Crain Brothers moved barges at the P&LE dock. (t. 21, 22, 23, 28, 45). Mr. Spratt, the assistant supervisor at the time of the accident,

testified that boatowners assisted the railroad in moving barges in adverse conditions (t. 89). Both Olejar and Spratt testified that a Crain Brothers gasoline pump was used at the P&LE dock. (t. 70, 91).

while the barge was under the control of P&LE being unloaded. The testimony was clear that no ice and snow was on the deck while Crain Brothers had custody of the barge.

If anything is questionable, it would be the jury's finding that Crain Brothers was 25% negligent. However, in light of the absolute duty to maintain a seaworthy ship, see the jury instructions of this point in part 3 of this opinion, Crain Brothers could be charged with a duty to keep the deck clean even when the ship was in P&LE's control. And there is some slight evidence of negligence on Crain Brothers part independent of the slippery deck although there is no evidence that such conditions were the proximate cause of the plaintiff's injuries. See Footnote # 10.

The court thus upholds the jury's 25%–75% apportionment of fault. But the 25% of fault on Crain Brothers part was not such as to preclude P&LE from doing its job under the principles developed in the *Weyerhaeuser* case. Indemnity is therefore appropriate under the facts of this case.

### (6) Apportionment of Damages.

A further fine distinction in this case arises from the fact that apportionment of damages between Crain Brothers and P&LE is proper under a joint tortfeasor's theory while it is not under an indemnity theory. A comparative negligence rule of contribution in noncollision admiralty cases was recently approved in the Third Circuit in *Griffith*, supra, 521 F.2d at 44. Indemnity, on the other hand, has always been an all or nothing proposition under the balancing tests of *Ryan* and *Weyerhaeuser*, supra.

The court is of the opinion that damages should be apportioned under the joint tortfeasor's theory. In this way, damages can be assessed exactly according to the jury's assessment of fault in this case—75% for P&LE and 25% for Crain Brothers.

The court notes that the absence of apportionment in admiralty cases runs counter to the prevailing viewpoint about indemnity in other contexts.[14] The normal rule is that an indemnitee—Crain Brothers—cannot be indemnified for his own negligence, absent clear contractual language so providing. *Gimbel Brothers, Inc. v. William H. Vanderherchen, Inc.*, 468 F.2d 597 (3d Cir. 1972). This court recently used this rule to require apportionment of damages under an ambiguous contract. *Norfolk & Western Rwy. Co. v. Hardinger Transfer Co., Inc.*, 415 F.Supp. 507 (W.D.Pa. 1976).

The above considerations about indemnity in other contexts, of course, do not permit the court to ignore the clear cut prohibition against apportionment of damages in admiralty indemnity cases. They do, however, induce the court to follow a joint tortfeasor apportionment theory when there is a clear cut choice between the joint tortfeasor theory and the indemnity theory and when the former theory is more in accord with the court's viewpoint about the fairest and most equitable approach to this case. Apportionment of damages will therefore be ordered.

### (7) Insurance.

■ Crain Brothers assigns as error the court's *ruling introducing into evidence its liability insurance.* The court will adhere to its prior ruling on this matter.

The concept of ownership pro hac vice, hotly contested at earlier stages of this trial relates to ownership, possession, custody and control of a barge. The existence of insurance is some evidence of such ownership and control which may properly be considered by the jury under the exception clause to Rule 411 of the Federal Rules of Evidence.[15] A cautionary instruction concerning this was given.

---

14. For recent criticism of the nonapportionment rule in admiralty indemnity cases, see Towage Accidents and the Implied Warranty of Workmanlike Service: A New Strict Liability, 10 Georgia Law Review 794, 801 (Spring 1976).

15. "Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the

### (8) Excessive Verdict.

■ A jury's assessment of damages should not be overturned unless it "shocks the conscience of the court", *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245 (3d Cir. 1971), or unless "it would be a denial of justice to permit it to stand", *Grunenthal v. Long Island R. Co.*, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968).

■ The award of $320,000 (See Appendix B) was within the range of permissible recovery in this case and need not be overturned under the standards of *Domeracki* or *Grunenthal*, supra. Applying the average rate of increase of the plaintiff's salary in the five years preceding the accident indicates a possible loss of wages to date of over $50,000. The plaintiff was making slightly under $10,000 per year in the three years before the accident and had about fifteen years remaining before retirement at the time of the accident. He claimed total disability and therefore, considering reasonable future salary increases and reducing the total amount to present worth, a future wage loss of several hundred thousand dollars could have been found by the jury. In addition, the plaintiff had $7,500 in medical bills and suffered considerable pain and suffering. The court finally notes that the recovery sustained in this case is similar to that sanctioned in *Grunenthal* and *Domeracki*, supra, as well as in the case of *McGinley v. United States of America*, 329 F.Supp. 62 (E.D.Pa.1971), involving an award of $355,200 to a forty-five year old longshoreman.[16]

### (9) Contributory Negligence.

■ On several occasions, the Supreme Court of the United States has ruled that contributory negligence is not an absolute bar to recovery in an admiralty case but rather serves to diminish damages. *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); *Socony Vacuum Oil Company v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939). The plaintiff advances three arguments to counter this traditional rule: that no proper evidence of fault on the plaintiff's part was presented to the jury, that plaintiff's fault, if any, constituted assumption of the risk rather than contributory negligence, and that the violation by Crain Brothers of a statutory duty owed to plaintiff excused any contributory negligence on the plaintiff's part.

■ It is true that contributory negligence is an affirmative defense on which the defendant bears the burden of proof. *Benson v. American Export Isbrandtsen Lines, Inc.*, 478 F.2d 152 (3d Cir. 1973). However, this does not mean that the defendant must produce testimony. The defendant can rest on the plaintiff's own evidence when, as in this case, it can be argued that such evidence establishes contributory negligence on the plaintiff's part. *Mroz v. Dravo Corp.*, 429 F.2d 1156 (3d Cir. 1970); *Barrett v. Robinson*, 65 F.R.D. 652 (E.D.Pa. 1975). The plaintiff's first argument must be rejected on this basis.

■ The plaintiff is correct in arguing that assumption of the risk is not a defense to an admiralty cause of action. *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. at 428, 59 S.Ct. 262; *Koshorek v. Pennsylvania R. Co.*, 318 F.2d 364 (3d Cir. 1963). The courts therefore have emphasized the importance of distinguishing between contributory negligence, which serves to mitigate damages, and assumption of the risk which serves as no defense at all, *Koshorek*, supra, at 367.

■ The court did instruct the jury on contributory negligence because it was, and is now, of the opinion that the record of this case created a jury question as to the possible contributory negligence of the plaintiff. The jury's conclusion that Mr. Dobbins was 25% at fault, see Appendix B, was reasona-

---

exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, *ownership, or control,* or bias or prejudice of a witness." [Emphasis added.]

16. The court also notes that this is the first time a jury has requested of this member of the court to be provided a pocket calculator, indicating that damages were being carefully assessed. The calculator was provided.

ble. The process of rounding a barge, as disclosed by testimony at trial, involves tough physical labor. A large and heavy barge is moved by a combination of the muscle power of one man and the current of the river. Proceeding with such a physical task on a surface covered with ice and snow constitutes negligent inattention to one's safety and goes beyond the mere risks of employment. In fact, such conduct could possibly be characterized as reckless. At any rate, a 25% reduction of the total recovery for the contributory fault of the plaintiff is eminently reasonable.

■ As to the plaintiff's third argument, that Crain Brothers violated a statutory duty owed to the plaintiff, the court need only note that the plaintiff was an employee of P&LE not of Crain Brothers. Further, the Jones Act claim against Crain Brothers was dismissed before trial and the defendant's liability was based upon the judicially created warranty of seaworthiness. Finally, the plaintiff could cite no precedent for his theory about the effect of violations of statutory duty upon the admiralty rule of comparative negligence. The more reasonable rule would appear to be that violations of a statute should be considered by the jury as one factor in assessing the relative degree of fault of the parties, as was done in this case, rather than as a total excuse for one party's negligence.

For all of the above reasons, the court has rejected each of the plaintiff's three arguments.[17] The plaintiff's motion to modify the verdict will be denied and the total recovery will be reduced by 25%.

### (10) Calculation of Damages.

The court has now completed its journey through the wonderland of admiralty law's maze of fine distinctions and it remains to sort out all of the various findings and calculate the proper measure of damages. Initially, the $320,000 total verdict must be reduced by the plaintiff's 25% contributory negligence, pursuant to part 9 of this opinion. This leaves a total recovery due the plaintiff of $240,000.

Two further factors must be considered: the $85,000 set off for the settlement of Civil Action 74–50 and the 25%–75% apportionment of damages as between Crain Brothers and P&LE. After a great deal of reflection upon this problem, the court has decided that damages should be assessed so as to accord P&LE the full benefit of its $85,000 settlement with the plaintiff.

Plaintiff's total recovery is $240,000 which is the total amount to be assessed against Crain Brothers subject to deduction of $85,000 to prevent double recovery. Ultimately Crain Brothers (assuming they can collect from the third party defendant P&LE) should only have to pay ultimately 25% of the amount or $60,000 and P&LE should reimburse it for the balance of $180,000. But P&LE has already paid $85,000 of its share of $180,000 leaving a balance of $95,000 owing.

Therefore defendant Crain Brothers should pay to plaintiff $155,000 ($240,000–$85,000) and is entitled to be reimbursed by P&LE in the amount of $95,000.

An appropriate order will be entered.

### APPENDIX A

### RELEASE

KNOW ALL MEN BY THESE PRESENTS, That I, CHESTER DOBBINS, of Baden, Beaver County, Commonwealth of Pennsylvania, for and in consideration of the payment of Eighty-five Thousand and no/100 ($85,000.00) Dollars, the receipt whereof is hereby acknowledged, and stipulations made of record in a certain suit at Civil Action No. 74–50 in the United States District Court for the Western District of Pennsylvania, have released and discharged, and by this release do for myself, my heirs, executors, administrators and assigns, release and forever discharge THE PITTS-

17. Plaintiff also argues that the defense of contributory negligence was not raised by defendant in either its pretrial narrative or at the pretrial conference. No exception or objection however, was raised by plaintiff to the court's charge on this subject either at the conference relative to instructions or in exceptions after charge. See Rule 51.

BURGH AND LAKE ERIE RAILROAD COMPANY, its successors and assigns, from all claims, damages, actions and suits of whatsoever kind, known or unknown, arising from or by reason of any bodily or personal injury, known or unknown, sustained by me resulting from an occurrence which happened on or about the 6th day of February, 1972, as more particularly set forth in the aforementioned suit filed in the United States District Court for the Western District of Pennsylvania, in which I have claimed that said THE PITTSBURGH AND LAKE ERIE RAILROAD COMPANY to be legally liable, but this release shall not be construed as an admission of such liability.

It is understood that I am not releasing any claims and demands that I have or may have against any person, association or corporation other than THE PITTSBURGH AND LAKE ERIE RAILROAD COMPANY, its successors or assigns, specifically I am not releasing CRAIN BROTHERS INC., their successors or assigns, on account of the accident, injuries and damages sustained by me at the time and place above mentioned; *but for the above consideration paid me I further agree that in the event CRAIN BROTHERS INC. shall be found to be joint tortfeasors with THE PITTS-BURGH AND LAKE ERIE RAILROAD COMPANY, this release shall constitute a reduction to the extent of the consideration recited, or of the pro rata share of THE PITTSBURGH AND LAKE ERIE RAILROAD COMPANY of the damages recoverable by the undersigned from all the other tortfeasors.*

It is hereby warranted that the undersigned has not made any settlement with or given any release to any other person or organization for damages arising out of said accident; and

It is further agreed that the undersigned will indemnify and hold harmless THE PITTSBURGH AND LAKE ERIE RAILROAD COMPANY, its successors or assigns, of and from any loss, costs and expense growing out of any breach of such warranty.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 3rd day of January, 1975. February.

(s) Chester Dobbins

WITNESSED BY

/s/ Paul L. Hammer

APPENDIX B

SPECIAL VERDICT

The jury is instructed to answer the following special interrogatories:

1. Was the barge on which plaintiff fell in a seaworthy condition at the time of the fall?     NO     .
   (yes or no)

2. Was the P & LE Railroad in the position of an owner Pro Hac Vice of the barge on which plaintiff fell at the time of the injuries?     NO     .
   (yes or no)

3. Was the plaintiff in any way at fault which fault was the proximate cause of his injuries?     YES     .
   (yes or no)

4. If your answer to No. 3 is yes, what percentage of fault do you find in the plaintiff as between plaintiff and Crain Brothers, Inc.?     25     .

5. What total amount of damages, if any, do you find plaintiff suffered? $    320,000     (total amount).

6. Did P & LE Railroad's fault, if any, contribute in a proximate way to the plaintiff's injuries?     YES     .
   (yes or no)

7. If your answer to No. 6 is yes, what percentage of fault do you find in the P & LE Railroad as between the P &

LE Railroad and Crain Brothers, Inc.? 75 %.

1. /s/ Mark E. Ragan
2. /s/ Frank C. Zacchero
3. /s/ B. K. Bostwick
4. /s/ Ann Yandrick
5. /s/ Tony Pastore
6. /s/ Stephen F. Vesci
7. _____