BOLIN, Judge.
This is a suit by plaintiff cement supplier on an open account against a building construction corporation and on the personal guaranty of the corporation president for the price of cement supplied over a period of several months. From judgment against Graves Construction, Inc., and its president Glen D. Graves, in solido, for $3,076.56, both defendants appeal, but the construction corporation does not question its liability in this court. We affirm the judgment.
It is undisputed the material for which this suit is brought was purchased by Graves Construction, Inc., and the amount of the claim is correct. The sole purpose of the appeal, according to appellants, is to determine whether Glen Graves is solidarily liable with the corporation based upon a continuing guaranty agreement dated April 23, 1970, and signed by Graves in order that Gifford-Hill would extend credit to Graves Construction, Inc., for the purchase of cement.
The pertinent portion of the guaranty agreement is:
“In consideration of GIFFORD-HILL & COMPANY, .INC., at my request giving or extending terms of credit to GRAVES CONSTRUCTION CO., INC., hereinafter called debtor, I hereby give this continuing guaranty to said GIFFORD-HILL & COMPANY, INC., herein called the creditor, its transferees or assigns, for the payment in full together with all interest, fees and charges of whatsoever nature and kind, of any indebtedness, direct or contingent, of said debtor to said creditor, up to the amount of -($) DOLLARS, whether due or to become due *504 and whether now existing or hereafter arising; and I hereby bind and obligate myself, my heirs and assigns, in solido with said debtor, for the payment of the said indebtedness precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing to and binding myself, my heirs and assigns, by all the terms and conditions of sale or contained in any note or notes signed or to be signed by said debtor, making myself a party thereto; and, waiving all notice and pleas of discussion and division, I agree to pay upon demand at any time to said creditor, its transferees, assigns or successors, the full amount of said indebtedness up to the amount of this guaranty, together with interest, fees, and charges as above set forth. The creditor may extend any obligation of the debtor one or more times and may surrender any securities held by it without notice or consent from me, and I shall remain at all times bound hereby, notwithstanding such extensions and/or surrender.
“This guaranty shall be a continuing guaranty, and shall remain in full force and effect until terminated by written notice, by either certified or registered mail to said creditor, its transferees or assigns, but such termination shall not affect or impair any liability hereunder at the time of such termination.
“IT IS EXPRESSLY AGREED that this continuing guaranty is absolute and complete, and that acceptance and notice of acceptance thereof by the creditor are therefore unnecessary and they are hereby expressly waived.”
Graves Construction was incorporated March 11, 1970 and immediately commenced doing business, initially on a small scale and progressing to a large residential construction corporation. Brodie Kelly, a salesman for plaintiff, contacted the corporation through Glen D. Graves. A credit application, entitled “Application for Open Account” was submitted on April 14, 1970, and was rejected by Gifford-Hill in its Dallas office. Inquiry was made of L. T. Baker, Jr., corporate credit manager and assistant treasurer of plaintiff, concerning the rejection. Baker had a telephone conversation with both Kelly and Graves on April 21, 1970, in which he advised Glen Graves that in order for the corporation to obtain credit it would be necessary that he execute a personal guaranty, which was done. This continuing guaranty agreement, quoted supra, was received back in the Dallas office April 24, 1970, became part of the company record and was introduced into evidence.
No sales were made by plaintiff to Graves Construction until March of 1971, when Bob Zager, salesman for plaintiff company, contacted Milburn Graves and offered to sell him cement at a price comparable to that for which he was purchasing it from other suppliers. At that time Graves Construction began ordering from plaintiff and plaintiff supplied most of the cement which was used by defendant company until it got into financial difficulties, became delinquent in its account, and owed plaintiff the stipulated balance of $3,076.56 for purchases from August through October, 1973. Zager testified when he first commenced selling defendant cement he called the Dallas office and received the customer number assigned to defendant company. This confirmation was a necessary precedent to taking and filling orders on credit.
The contentions of Glen D. Graves, in denying his personal liability for this debt, are that he had been orally informed the agreement had been destroyed in the Dallas office and that Gifford-Hill did not rely on the agreement when it started selling cement to defendant corporation. All oral testimony tending to vary the written agreement was admitted subject to plaintiff’s objection. With reservation of its right under its objection, plaintiff offered testimony in an effort to prove it never informed defendant the guaranty agreement had been destroyed or abandoned. It is *505 undisputed, however, that at the time plaintiff’s salesman Zager made the sales which form the basis of this suit neither Zager nor Milburn Graves knew of the guaranty-agreement.
The lower court found that Glen Graves had signed the continuing guaranty; that being a businessman he should have obtained the return of the agreement or written a letter rescinding his guarantee if he did not intend to be bound by it; that failing to do so, he continued to be obligated for the debts of Graves Construction, Inc.; and that his liability was in solido with the corporation.
We find no error in this conclusion. Graves does not contend the contract is void or its terms ambiguous. In the absence of some allegation and proof to the contrary, a written contract is the law between the parties and “the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.” (Louisiana Civil Code, Article 1945). By the written instrument Graves clearly gave a continuing guaranty to Gifford-Hill promising to pay all debts incurred by the construction corporation and obligated himself in solido with the debtor, waiving all pleas of discussion and division. The instrument also provides: “This guaranty shall be a continuing guaranty, and shall remain in full force and effect until terminated by written notice, by either certified or registered mail to said creditor, its transferees or assigns, but such termination shall not affect or impair any liability hereunder at the time of such termination.”
Parol evidence of Mr. Graves, admitted over the objection of plaintiff, was clearly inadmissible as an attempt to abrogate the written agreement. Since there is no evidence that Mr. Graves attempted to or did terminate the guaranty in the manner provided in the instrument itself, it follows he is liable in solido with the con-struction corporation for the debt to plaintiff.
The judgment is affirmed at appellants’ cost.
DENNIS, J., concurs with written reasons.