Ethel M. ROBIN, in her own name and as personal representative of the Estate of Harry J. Robin, and for the use and benefit of her minor child, Brett M. Robin, Plaintiff,

v.

SUN OIL COMPANY, Defendant, Cross-Claimant Defendant in Cross-Claim, Appellant.

TELEDYNE MOVIBLE OFFSHORE, INC., Third-Party Defendant, Cross-Claimant and Appellant,

v.

TIDEX, INC. and Tidewater Grand Isle, Inc., Defendants, Third-Party Plaintiffs, Defendants in Cross-Claim, Appellees.

No. 75–1382.

United States Court of Appeals, Fifth Circuit.

March 11, 1977.

Rehearing Denied March 18, 1977.

Charles J. Hanemann, Houma, La., for appellant.

George W. Healy, III, Thomas J. Wagner, Whitfield F. Fitzpatrick, New Orleans, La., for Tidewater Grand Isle.

Before MORGAN and GEE, Circuit Judges, and HUNTER, District Judge.*

EDWIN F. HUNTER, Jr., District Judge:

This appeal in which theories of initial, contingent and secondary liabilities were originally asserted, arises out of a drowning death off an offshore stationary fixed drilling platform located in the Gulf of Mexico on the Outer Continental Shelf. Petitioner, as the widow and representative of the estate of deceased, brought the law suit against Sun Oil and Tidex to recover damages for wrongful death. Sun owned the platform. Tidex, pursuant to a contract with Sun, operated supply vessels which serviced the platform. Teledyne (Movible), pursuant to a contract with Sun, conducted drilling operations on the platform. Sun and Tidex filed cross-claims against each other. Tidex filed a third party complaint against Teledyne. Teledyne was the employer of the deceased. It agreed to hold Sun harmless, and has from the beginning undertaken Sun's defense.

Plaintiff's claim was settled for $141,000. Half of the money was advanced by Sun. The other half was advanced by Tidex. The parties agreed to litigate the issue of liability between themselves. The settlement agreement provides for certain conse-

* Senior District Judge for the Western District of Louisiana, sitting by designation.

quences contingent upon the findings as to liability.[1]

The case was tried to the Court. The District Court found as a fact that the negligence of Teledyne was the sole proximate cause of the accident; that negligence in the context of the agreement was synonymous with the phrase "liability in damages to the plaintiff;" and that Paragraph 10 of the pretrial order governed. Judgment was entered accordingly. Teledyne appealed with respect to the findings of negligence, indemnity and the interpretation of the settlement agreement.

A careful reading of the record persuades us that the findings of the lower court as to negligence are not "clearly erroneous." F.R.Civ.P. 52(a). The finding that there was no negligence on the part of either Tidex, Sun or the deceased must be affirmed. Under the same standard, we affirm the finding that the sole proximate cause of the accident was the negligence of Teledyne.[2] *Coulter v. Ingram Pipeline, Inc.*, 511 F.2d 735 (5th Cir. 1975).

### THE INDEMNITY CLAIMS OF TELEDYNE IN THE NAME OF SUN AGAINST TIDEX

The trial judge was not persuaded by Teledyne's theories: neither are we. Nothing anywhere in this case, the stipulation or the contracts, provides or allows Teledyne to be indemnified by a non-negligent party for its own negligence with respect to its employees. The foundation for any such contractual indemnity would necessarily be pegged upon liability of Sun. Sun was absolved by the District Court. We agree, too, that there is absolutely no causal relation between the acts of the Captain of Tidex's work boat, MV BEAUREGARD, and the death of decedent. The indemnity provisions in the Tidex contract with Sun are simply not applicable to Teledyne's liability to Sun resulting from its operations. *Lanasse v. Travelers Insurance Company*, 450 F.2d 580 (5th Cir. 1971).

### THE SETTLEMENT

Appellant vigorously attacks the trial court's interpretation of this agreement. Appellant insists that the trial court was in error as a matter of law in construing the phrase "liability in damages" as being synonymous with "negligence."

Paragraphs 9 and 10 provide:

9) That in the litigation between Sun, Movible [Teledyne] and Tidex, if no liability in damages to the plaintiff is found on anybody's part, Movible will pay $60,-000.00 comp exposure, and Sun and Tidex will each pay one-half of the excess over that amount;

10) That if liability in damages to the plaintiff is found on the part of Sun or Teledyne and not Tidex, then Sun reimburses Tidex the portion that it has advanced and likewise if liability is found on the part of Tidex and not Teledyne or Sun, Tidex reimburses Sun the one-half portion that it advanced on the settlement claim. If both are at fault, Tidex pays half of $10,150.55.

■ Teledyne was the *employer* of the decedent. Teledyne's exclusive liability to the plaintiff was under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 905. Teledyne could not have any "liability in damages to the plaintiff" for negligence because Section 5 of the Longshoremen's and Harbor Workers' Compensation Act *destroys* any underlying tort liability of the employer. In the words of this Court, "[T]here simply exists no underlying tort liability upon which to base a claim against the employer." *Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Serv.*, 377 F.2d 511, 515 (5th Cir.), cert. *denied*, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (1967). To the same effect are *Smith Petroleum Serv. v. Monsanto Chem. Co.*, 420 F.2d 1103, 1111–1112 (5th Cir. 1970); *General Elec. Co. v. Cuban American Nickel Co.*, 396 F.2d 89, 96 (5th Cir. 1968); *Loffland Bros. Co. v. Roberts*, 386 F.2d 540,

---

1. Agreement attached as an appendix.

2. Indeed, they are fully supported by the record.

549 (5th Cir. 1967); *Brown v. American-Hawaiian S. S. Co.*, 211 F.2d 16 (3rd Cir. 1954).

■ The trial court implicitly recognized that Teledyne could not be "liable in damages" to plaintiff, and that words in a contract are to be given their natural popular meanings unless from the context it appears that the parties intended otherwise. It proceeded to add:

"Although Sun and Teledyne argue that 'liability in damages to the plaintiff' could not be found on the part of Teledyne, because it was the employer of the deceased, Paragraph 10 clearly indicates that the intention of the parties was that 'liability in damages to the plaintiff' was to mean 'negligence.'"

Teledyne's immunity to liability in damages is a valuable right. The trial court has held in essence that Teledyne waived this right. The language "liability in damages," suggests quite the opposite.

■ We must accord to the words their plain, literal meaning. *Independent Oil Workers v. Mobil Oil Corp.*, 441 F.2d 651, 653 (3rd Cir. 1971); *Aetna Cas. & Sur. v. Crawford*, 370 F.2d 917, 918 (5th Cir. 1967); *Employing Lithographers v. N.L.R.B.*, 301 F.2d 20, 28 (5th Cir. 1962); 3 Corbin *Contracts* § 535. Words in a contract must be given their usual and ordinary meaning, and technical words are given their usual legal meaning. *Dana Corp. v. United States*, 470 F.2d 1032, 1043, 200 Ct.Cl. 200 (1972); *Western Oil Fields, Inc. v. Pennzoil United, Inc.*, 421 F.2d 387, 390 (5th Cir., 1970); Restatement, Contracts, § 230. We may not rewrite the contract except upon clear and convincing proof that there was an agreement which, by mutual mistake, was not carried into the written contract. Here, there was no extrinsic evidence, not even a bit of it, relevant or otherwise, in aid of interpretation.

■ From the arguments—not proof—of Tidex, a conclusion was entered that the subjective intent of the parties was to say "negligence," which they had not said, and not to say "liability in damages," which the parties *had* said. When a clause of a contract is clear and unambiguous the letter of it cannot be disregarded in an effort to pursue the spirit. (*Maloney v. Oak Builders, Inc.*, 256 La. 85, 235 So.2d 386 (La.S.C. 1970)); *Gifford-Hill v. Graves Construction, Inc.*, 316 So.2d 502 (La.App.1975)).

■ Tidex argues that in this case we would be within the bounds of sound legal principles and fundamental rules of contract construction if we look not only to the actual wording of the contract, but also give consideration to its subject matter, the facts relating to the controversy in issue, and the surrounding circumstances, in order to determine the intention of the parties as reflected by the words used. The facts and surrounding circumstances, and the provisions of the contract in its entirety, persuade us that the parties meant to say precisely what they said. The contract, drawn by lawyers skilled in the field of admiralty, conforms to the realistic expectations as to the exposure of each party as of the date of settlement. Paragraph 3 reserves the issue of "liability"[3] to be litigated between the parties. It expressly notes that Teledyne was a party only "through Tidex's Third Party Complaint." Paragraph 6 reveals the type of liability which involved Teledyne:

"Any rights Tidex may have as against Teledyne through any contract with Sun are reserved for Tidex and vice versa;"

This language contains the essence of Tidex's third party claim against Teledyne. It expresses a viable theory of liability to which Teledyne was exposed.[4]

Tidex argues that there was an intention to treat "negligence" and "liability in damages to the plaintiff" as synonymous. We reiterate that there was no evidence of that intention. It is a manifest and palpable

---

3. This paragraph does not contain the words "in damages to the plaintiff."

4. Tidex also raised the issue of borrowed servant. If the decedent were held to be the bor-

rowed servant of Sun, Teledyne might not have been protected by Section 5 of the Longshoremen's Act and could have been held "liable in damages to the plaintiff."

improbability that Teledyne would waive its immunity to tort liability. We interpret the contract to mean just what it says and no more. Counsel in this case were competent maritime lawyers. They knew the difference between liability and negligence.[5] They knew how to use other words if they chose to do so.[6]

In applying the settlement stipulation to the actual findings of fact by the district court, we conclude that Paragraph 9 applies. Teledyne bears the ultimate responsibility for $60,000 toward the settlement fund. Sun and Tidex each must bear the responsibility for one-half of the excess over that amount.

Affirmed in part, modified in part, and remanded.

## APPENDIX

## APPENDIX TO PRE–TRIAL ORDER

Pursuant to settlement conferences held between counsel for Ethel M. Robin, Sun Oil Company, and Tidewater Grand Isle and Tidex, Inc., a settlement agreement was struck, comprising the following conditions:

1) That Robin would be paid by Sun Oil and Tidex a reasonable settlement amount of $141,000.00, one-half to be advanced by each.

2) Future comp exposure of $60,000.00 is stipulated.

3) That the question of liability will be litigated between Sun Oil, Tidex, and Teledyne Movible Offshore (now a party to this suit through Tidex's Third Party Complaint against Teledyne);

4) That for this purpose all witnesses of the plaintiff can be called by any party but only for questions concerning liability and not for questions concerning quantum.

5) That Sun will abandon all claims based upon the *Sieracki* doctrine, and that Tidex will abandon all claims based upon the *Ryan* doctrine;

6) That any rights Tidex may have as against Teledyne through any contract with Sun are reserved for Tidex and vice versa; any rights of Sun against Tidex based upon the Blanket and Operating Agreement are also reserved.

7) That Teledyne will be allowed to urge $10,150.55 claim for comp and funeral expenses to date;

8) That claims for attorneys' fees are waived by all parties;

9) That in the litigation between Sun, Movible and Tidex, if no liability in damages to the plaintiff is found on anybody's part, Movible will pay $60,000.00 comp exposure, and Sun and Tidex will each pay one-half of the excess over that amount;

10) That if liability in damages to the plaintiff is found on the part of Sun or Teledyne and not Tidex, then Sun reimburses Tidex the portion that it has advanced and likewise if liability is found on the part of Tidex and not Teledyne or Sun, Tidex reimburses Sun one-half portion that it advanced

**5.** In *Manning v. M/V "Sea Road,"* 417 F.2d 603 (5th Cir. 1969), Chief Judge Brown noted the difference:

> And from a substantive point of view Shipowner misconceives the significance of the violation of the regulations. True, violation here is negligence, and *negligence for which the employer is not liable because of the exclusive liability provision of the Longshoremen's Act,* 33 U.S.C.A. § 905. 417 F.2d at 611 (Emphasis added.)

**6.** "Terms of art or technical phrases are to be interpreted according to their received meaning with those who profess the art or profession to which they belong." La. Civil Code Art. 1947.

In stating our conclusion, we might well have quoted an 1846 decision of the Supreme Court of Louisiana in which Justice King expressed it this way:

> There is no evidence in the record showing that the intention of the parties differed from the plain and obvious meaning of the language used in the receipt. In the absence of such proof, it must be governed by the ordinary and well-known rules of interpretation.
>
> Terms of art, or technical phrases, are to be interpreted according to their received meaning with those who profess the art or profession. *Haydel v. Ruossel, Executor,* 1 La.Ann. 35 at p. 38.

on the settlement claim. If both are at fault, Tidex pays half of $10,-150.55.

11) That all funds paid shall bear interest at the annual rate of seven (7%) per cent from date paid until the time that adjustment is made pursuant to the results of the litigation between Sun, Teledyne and Tidex.