Chester DOBBINS, Plaintiff-Appellant at 77–1213,

v.

CRAIN BROTHERS, INC., a corporation, Defendant and Third-Party Plaintiff-Appellant at 77–1214,

v.

The PITTSBURGH AND LAKE ERIE RAILROAD COMPANY, a corporation, Third-Party Defendant and Appellant at 77–1215.

Nos. 77–1213 to 77–1215.

United States Court of Appeals, Third Circuit.

Argued Oct. 18, 1977.

Decided Nov. 23, 1977.

---

Paul L. Hammer, Pittsburgh, Pa., for plaintiff-appellant Dobbins.

John R. McGinley, Jr., Pittsburgh, Pa., for Crain Brothers, Inc.

G. Edward Yurcon, Pittsburgh, Pa., for Pittsburgh and Lake Erie Railroad Co.

Before ADAMS and GARTH, Circuit Judges, and LAYTON,* District Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal arises from an accident at the Pittsburgh & Lake Erie Railroad Company's (PLE) Colona Coal Dock on the Ohio River, in which the plaintiff Chester Dobbins, a member of the railroad's river crew, was injured while working on a barge owned by Crain Brothers, Inc. (Crain). After a jury trial, the district court entered a judgment against Crain in favor of Dobbins, which we affirm. However, the district court then held that liability must be apportioned between the defendant Crain and the third-party defendant PLE, and thus entered a judgment in Crain's favor against PLE for part of Crain's liability to Dobbins. It is only this portion of the district court's judgment which we are obliged to reverse.

This accident occurred before the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, which became effective on December 26, 1972, and which substantially changed the law involved in this case.

* United States Senior District Judge for the District of Delaware, sitting by designation.

*See Hurst v. Triad Shipping Co.*, 554 F.2d 1237 (3d Cir. 1977). Hence there is little probability that in the future courts will be required to confront the legal problems presented by this case. Nevertheless, since we believe that the district court's allocation of liability does not comport with the *Sieracki*[1]-*Halcyon*[2]-*Ryan*[3] trilogy we reverse so much of the district court's judgment as required contribution between PLE and Crain. For the reasons following, we hold that the district court erred in failing to present to the jury the question of whether Crain was entitled to indemnity from PLE based on a breach by PLE of its warranty of workmanlike performance.

I.

Crain, the vessel owner in this case, hauls coal on riverbarges for the Youngstown Sheet and Tube Company. Crain delivers the coal in barges to PLE at its Colona Coal Dock. PLE then tranships the coal from the barges to its railroad cars. On February 5, 1972, in the afternoon, Crain towed its Barge No. 681, loaded with coal, to the Colona facility to be unloaded. Dobbins, a longtime employee of PLE, reported to work just before midnight. Dobbins was a full time member of PLE's river crew, holding the position of "car loader no. 2", a utility man who performed various tasks as needed.

About one a.m. on February 6 it began to snow, and the snow continued throughout the night. Shortly before eight a.m., Dobbins was ordered by his supervisor to "round" Barge 681 and another barge. Dobbins loosened the mooring on the downriver inboard corner of the barges and removed the upriver mooring so that the river current would pivot the barges 180 degrees. After the current had brought the barges around, Dobbins stepped onto Barge 681 in order to moor the upriver corner. He fell on ice and snow which had accumulated on the deck of the barge, and was injured. *See* the district court's opinion, 432 F.Supp. 1060 (W.D.Pa.1976).

II.

Dobbins thereafter collected $560 in Longshoremen's and Harbor Workers' compensation from PLE. He then filed suit against PLE in the Western District of Pennsylvania (at Civil Action No. 74–50), asserting a claim under the Jones Act, 46 U.S.C. § 688 (1970). Dobbins and PLE settled for $85,000. The settlement was approved by the district court, and Dobbins subsequently executed a release in PLE's favor. Crain was not a party to the suit at No. 74–50, nor was it a party to the settlement or release.

Dobbins then filed the instant action (at Civil Action No. 75–99) against Crain, asserting claims of unseaworthiness and under the Jones Act. The district court dismissed the Jones Act claim during trial on the ground that Crain was not Dobbins' employer. This ruling has not been appealed. After the evidence had been presented, the case was submitted to the jury on Special Interrogatories. The jury found that:

1) the barge was unseaworthy

2) PLE was not the owner *pro hac vice* of the barge

3) Dobbins was 25% at fault

4) Dobbins suffered total damages in the amount of $320,000.

5) As between Crain and PLE, PLE was 75% at fault and Crain was 25% fault.

The district court ruled that Dobbins' recovery should be reduced by 25% due to his contributory negligence, rejecting the plaintiff's contention that the defense of contributory negligence should be unavailable because certain safety regulations had been violated. It further ruled that Crain was entitled to 75% contribution from PLE, and that the joint tortfeasor release executed by

1. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

2. *Halcyon v. Haenn Ship Ceiling & Refitting Co.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952).

3. *Ryan Stevedoring Co. v. Pan Atlantic S.S. Co.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

Dobbins in No. 74–50 should be given the effect of reducing Dobbins' recovery by $85,000. *Dobbins v. Crain Brothers*, 432 F.Supp. 1060 (W.D.Pa.1976). Its amended judgment order gave Dobbins a judgment against Crain alone for $155,000 ($320,000—$80,000 [representing the 25% contributory negligence]—$85,000 [the consideration for the release]). It gave Crain a judgment over against PLE for $95,000 (75% of $240,-000, minus the $85,000 credit for the payment made pursuant to the release). Crain was left with a net liability of $60,000 (25% of $240,000). All the parties have appealed.

## III.

In our opinion, the central question in this appeal concerns the allocation of liability between Crain and PLE. The district court, after asking the jury to assess damages suffered by Dobbins, instructed the jury to apportion fault as between Crain and PLE. Based on the jury's 75%—25% allocation of fault, the court held that damages should be apportioned under a joint tortfeasor theory, and that Crain was therefore entitled to recover from PLE 75% of

the damages assessed against it (minus the amount paid by PLE for the release). Essentially, the district court allowed contribution between a vessel owner sued by a longshoreman[4] and a stevedore-employer. On appeal, Crain urges that this disposition was incorrect and that the applicable case-law requires that it (Crain) be completely indemnified by PLE for any amount it is required to pay to Dobbins. We agree that contribution was improperly ordered in this case; however, the jury must decide whether Crain is entitled to indemnity.

### A.

■ Under § 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905 (1970) [LHWCA][5], the stevedore-employer of an injured longshoreman or harbor worker is immune from all tort liability. The employee's exclusive remedy against his employer is compensation under the Act.[6] However, the longshoreman, if injured on a vessel or by a vessel's equipment, has a cause of action against the vessel owner based on the vessel's unseaworthiness. *Seas Shipping Co. v. Sieracki,*

---

4. On appeal, PLE has contested Dobbins' status as a longshoreman, contending that Dobbins was a seaman. PLE's Brief at 6. We have no hesitancy in affirming Dobbins' status as a longshoreman, and not that of a seaman or "member of the crew". In its charge to the jury, the district court stated that "the duty to maintain a seaworthy vessel extends not only to members of the crew, but . . . [to] *others, such as plaintiff,* an employee of a land-based employer . . . who . . . work[s] upon the vessel. . . ." Tr., vol. 2, at 194–95 (emphasis added). If not explicit, it is at least implicit in the court's instruction to the jury that Dobbins was a longshoreman and not a member of the crew. Whatever may be the case, insofar as a factfinder is concerned, where the plaintiff's status as longshoreman or seaman is the subject of factual dispute, *see Desper v. Starved Rock Ferry*, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952); *Griffith v. Pittsburgh Steel Corp.*, 521 F.2d 31 (3d Cir. 1975), here no exception was taken to the court's charge, nor did any party request a charge which would have required the jury to determine Dobbins' status as either a seaman or a longshoreman. Nor did any party seek a jury interrogatory as to Dobbins' status, or except to the lack of such an interrogatory.

It is obvious that it was this circumstance which led the district court in its opinion denying Crain's motions for a new trial and judgment n. o. v. to treat with the issues from the standpoint that Dobbins was a longshoreman or harbor worker. *See* 432 F.Supp. at 1062 (noting that the 1972 amendments to the LHWCA do not apply in this case), 1066 ("the situation *now confronting the court* where an injured *harbor worker* sues the shipowner. . . .") (emphasis added), 1066–69 (discussing *Sieracki, Halcyon, Ryan,* and *Cooper Stevedoring Co. v. Kopke. Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), and their applicability to this case; those cases all involved suits by longshoremen against shipowners). We agree that on the state of the record before us the district court did not err.

5. All references to the LHWCA in this opinion are to the Act as it was before the 1972 Amendments.

6. There is an exception to the stevedore's immunity when the longshoreman is injured on a vessel, and the stevedore is the owner *pro hac vice* of that vessel. In such a case, the injured longshoreman may sue the stevedore under the doctrine of unseaworthiness. *Reed v. The Yaka*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963).

328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Shipowners, sued under *Sieracki*, prior to the 1972 Amendments as a matter of course impleaded the stevedore-employers.[7] It is out of such a situation that the present problem arose.

In *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), the Supreme Court held, in a situation where the jury found the impleaded stevedore-employer to be 75% responsible for the plaintiff's injuries and the defendant shipowner 25% responsible, that there could be no contribution between the shipowner and the stevedore. The Court reasoned that, in a field where Congress had acted by substantial legislation, any right of contribution should be created by Congress, not the Court. The *Halcyon* rule has been reaffirmed in *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 412, 74 S.Ct. 202, 98 L.Ed. 143 (1953), *Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd.*, 394 U.S. 404, 417, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), and *Atlantic Coast Line R. Co. v. Erie Lackawanna R. Co.*, 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972) (per curiam). Courts have consistently applied this rule whenever an attempt has been made to claim contribution, based on joint tort liability of the stevedore-employer and the vessel owner, in cases arising out of longshoremen's injuries. 1A Benedict on Admiralty § 119 (7th ed. rev., Bender 1977) [hereinafter cited as Benedict]. We can only conclude, therefore, that *Halcyon* remains the law, and that since a stevedore-employer is immune from tort liability to the longshoreman under § 5 of the LHWCA (as distinct from liability for statutory compensation), the employer cannot be a joint

tortfeasor with a vessel owner sued for unseaworthiness. Thus the vessel owner can have no claim for contribution from the stevedore-employer as a joint tortfeasor. *See Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd., supra*, 394 U.S., at 421 n. 25, 89 S.Ct. 1144. *See also Hagans v. Farrell Lines*, 237 F.2d 477 (3d Cir. 1956).

*Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), and *Griffith v. Wheeling Pittsburgh Steel Corp., supra*, which allowed contribution between the stevedore-employer and the vessel owner, are clearly distinguishable from the case *sub judice*. In *Cooper* and *Griffith* the stevedores were also the owners *pro hac vice* of the vessels on which the plaintiffs were injured. They were therefore directly liable to the longshoremen under *Reed v. The Yaka, supra*.[8] Thus the § 5 immunity was inapplicable, and the stevedore-employers could be liable, together with the actual shipowners, for maritime torts. Since there could be joint tortfeasor liability, there could also be contribution. Here, however, the jury found PLE was *not* the owner *pro hac vice* of the barge. As such *Cooper* and *Griffith* are inapposite, and § 5 of the LHWCA and *Halcyon* preclude any contribution as between PLE and Crain.

## B.

In *Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 235, 100 L.Ed. 133 (1956), however, the Court held that § 5 of the LHWCA did not prohibit a claim by the shipowner against the stevedore-employer for *indemnity*.[9]

---

7. Since the 1972 Amendments, there is no longer any need for the vessel owner to implead the stevedore-employer, as indemnity is no longer available. *See* note 9 *infra*; *Hurst v. Triad Shipping Co., supra*.

8. In *Cooper* the liability of the shipowner was predicated on unseaworthiness, as the action there arose prior to the 1972 Amendments; in *Griffith* the liability was predicated on negligence, as the action there arose post-1972 Amendments. *See* note 9 *infra*.

9. In the 1972 Amendments Congress legislatively overruled *Ryan* in new § 5(b) of the

LHWCA, Pub.L. 92–576, § 18(a), 86 Stat. 1263, 33 U.S.C.A. § 905(b) (West Supp.1977). As part of a compromise, Congress increased the compensation benefits to injured longshoremen, abolished shipowners' absolute unseaworthiness liability and substituted liability for "negligence", and precluded the shipowner's recovery of an indemnity from the stevedore-employer. *See* H.R.Rep.No.92–1441, 92d Cong., 2d Sess. (1972), [1972] U.S.Code Cong. & Admin.News 4698, 4702; *Hurst v. Triad Shipping Co., supra*.

This liability on the part of the stevedore does not arise "on account of [the employee's] injury or death arising out of that employment," § 5 LHWCA. Rather, it is contractual in nature, based on an implied warranty of the stevedore to perform its work properly and safely, which warranty runs from the stevedore-employer to the shipowner. A breach of this warranty of workmanlike performance by the stevedore, which leads to foreseeable liability on the part of the shipowner, gives rise to a claim for indemnity by the shipowner, "absent conduct on its [the shipowner's] part sufficient to preclude recovery," *Weyerhaeuser S.S. Co. v. Nacirema Operating Co.*, 355 U.S. 563, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958).

The cases have been generous in finding the vessel owner entitled to indemnity. It appears that "any unreasonable action by a stevedore which activates or exacerbates a latent or manifest condition of unseaworthiness will [breach the stevedore's warranty, and will therefore] establish the shipowner's right to indemnification." *Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co.*, 444 F.2d 727, 731 (3d Cir. 1971). Even in the absence of negligence a stevedore-employer may be held to indemnify a shipowner if the stevedore's breach of warranty is even in part the proximate cause of a longshoreman's injuries. *Italia Societá per Azioni di Navigazione v. Oregon Stevedoring*, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); *Thompson v. Trent Maritime Co.*, 353 F.2d 632 (3d Cir. 1965).

Concomitantly, even negligent shipowners have been held entitled to indemnity from stevedore-employers who have breached the warranty of workmanlike performance. *See Yamashita Shinnihon Kisen K.K. Tokyo v. W. J. Jones & Sons, Inc.*, 474 F.2d 847, 850 & n.9 (9th Cir. 1973). This court has characterized the "critical question" with respect to the shipowner's conduct as "whether the shipowner's breach of his absolute duty to furnish a safe and seaworthy vessel so prevented or hindered the stevedore from completing its performance that

the subsequent breach of warranty by the stevedore may be deemed excused." *Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co., supra*, at 733.

It appears, then, that Crain may well be entitled to a *Ryan* indemnity because of PLE's negligence in causing Dobbins' injuries. It also appears that Crain's 25% fault, as found by the jury, is not necessarily conduct which precludes its recovery of the indemnity. We may not, however, reach such conclusions as a matter of law. It is peculiarly within the factfinder's province to determine whether the stevedore breached its warranty of workmanlike performance, so as to entitle the shipowner to indemnity, *Thompson v. Trent Maritime Co., supra*, at 639, and whether the "shipowner has created conditions which so impede the stevedore's performance that his [the stevedore's] breach [of warranty] may be excused," *Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co., supra*, at 732. The fact that the jury found PLE to be 75% at fault does not permit us to infer a breach of warranty, since a "specific finding of negligence does not necessarily establish a breach of warranty," *id.* at 731.

In the case *sub judice* the district court charged the jury that it should determine the comparative fault as between Crain and PLE. Tr. for May 10, 1976, vol. 2, at 202. That charge did not present the jury with the issues of whether Crain was entitled to an indemnity from PLE, *i. e.* whether PLE breached its warranty of workmanlike performance to Crain, and whether Crain engaged in conduct sufficient to excuse that breach. Accordingly, we are compelled to reverse, as the judgment which was entered by the district court does not correctly reflect the principles of indemnity discussed above.

### C.

*Federal Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), does not require a different result. *Burnside* held only that a

stevedore-employer who had paid compensation to an injured longshoreman was not limited to his subrogation rights against the shipowner under § 33 of the LHWCA, 33 U.S.C. § 933, and that federal maritime law recognized a direct tort action against the vessel owner, based on a duty of due care owed by the shipowner to the stevedoring contractor. In so holding, the Court noted that *Burnside* was not a departure from *Halcyon*. The stevedore in *Burnside* was not seeking contribution, nor was it asking the shipowner to share responsibility for their joint negligence. The stevedore sought instead to recover the full amount of its liability to the longshoreman, based not on the vessel owner's wrong to the longshoreman, but rather on the vessel owner's independent wrong to the stevedore. 394 U.S. at 417–18, 89 S.Ct. 1144.

Here, however, PLE made no direct tort claim against Crain for the breach of any duty which Crain owed to PLE, or for any negligence by Crain to PLE. Rather, PLE asked the district court to do precisely that which the Supreme Court would not permit in *Halcyon* and *Burnside, i. e.,* apportion damages between the parties so that they share responsibility for their joint negligence—in effect, contribution. As such *Halcyon* (which rejected contribution, *see* p. 563 *supra*)—and not *Burnside*—controls. PLE on this record was therefore not entitled to an apportionment of damages.[10]

## IV.

■ In settlement of the Jones Act suit brought against PLE (W.D.Pa.Civ. No. 74–50), Dobbins accepted $85,000 plus medical expenses, and in consideration released PLE from:

> all claims, damages, actions and suits of whatsoever kind, known or unknown, arising from or by reason of any bodily or personal injury, known or unknown, sustained by me resulting from an occurrence which happened on or about the 6th day of February, 1972, as more particularly set forth in the aforementioned suit filed in the United States District Court for the Western District of Pennsylvania, in which I have claimed that said THE PITTSBURGH AND LAKE ERIE RAILROAD COMPANY to be legally liable, but this release shall not be construed as an admission of such liability.

**10.** In *Burnside* the Supreme Court assumed that the stevedore was faultless *vis a vis* the shipowner, and expressed no opinion concerning the "interaction between the shipowner's breach of warranty claim and the stevedoring contractor's tort claim," 394 U.S. 418, 89 S.Ct. 1152, since the stevedore had charged the shipowner with negligence in a counterclaim for damages, and not as a defense to the latter's *Ryan* claim for indemnity. The interaction of a *Ryan* indemnity claim when a *Burnside* tort claim is pleaded as a defense is not before us in this case either, since here no *Burnside* claim was ever pleaded. It has been argued that the logical outcome when a court is faced with conflicting *Ryan* and *Burnside* claims is that each party bear that portion of the longshoreman's recovery attributable to its own breach of duty. *Cf. United States v. Reliable Transfer,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). We express no view on this argument. We note in this regard that the argument has been rejected by the Ninth Circuit in *Yamashita-Shinnihon Kisen K. K. Tokyo v. W. J. Jones & Sons, Inc.,* 474 F.2d 847 (9th Cir. 1973), and the Second Circuit in *Landon v. Lief Hoegh & Co.,* 521 F.2d 756 (2d Cir. 1975). The court in *Yamashita* reasoned that there was no intent in *Burnside* to depart from the long line of cases holding that the vessel owner absent conduct sufficient on its part to preclude recovery, was entitled to a full indemnity when the stevedore breaches its *Ryan* duty. The court in *Landon* read *Burnside* even more narrowly, implying that *Burnside* was limited to the rare case where the longshoreman's judgment against the shipowner is less than the compensation payments made by the stevedore, and thus § 33 of the LHWCA does not result in complete reimbursement to the stevedore. While we question whether *Burnside* can indeed be interpreted as restrictively as the *Landon* court interpreted it, we do not pass upon the issue.

Neither do we pass upon the issue of whether there are implied contractual obligations running from the shipowner to the stevedore which might give the stevedore a *Ryan*-type indemnity action, and if so, whether the interaction of *Ryan* and reverse-*Ryan* claims would lead to apportionment of damages. *But see Yamashita-Shinnihon Kisen K. K. Tokyo, supra.* In *Burnside* the Supreme Court expressly left these questions open, although it did not rule out the possibility of such a reverse-*Ryan* indemnity action. *See* 394 U.S. at 418–21, 89 S.Ct. 1144.

The district court approved the settlement on January 20, 1975 in a Seaman's Settlement Hearing,[11] and the release was executed on February 3, 1975.

In the release Dobbins expressly reserved any claims against Crain:

It is understood that I am not releasing any claims and demands that I have or may have against any person, association or corporation other than THE PITTSBURGH AND LAKE ERIE RAILROAD COMPANY, its successors or assigns, specifically I am not releasing CRAIN BROTHERS, INC., their successors or assigns, on account of the accident, injuries and damages sustained by me at the time and place above mentioned.

He further agreed to a reduction in any recovery he might win against Crain, in the event Crain and PLE were found to be joint tortfeasors:

but for the above consideration paid me I further agree that in the event CRAIN BROTHERS INC. shall be found to be joint tortfeasors with THE PITTSBURGH AND LAKE ERIE RAILROAD COMPANY, this release shall constitute a reduction to the extent of the consideration recited, or of the pro rata share of THE PITTSBURGH AND LAKE ERIE RAILROAD COMPANY of the damages recoverable by the undersigned from all the other tortfeasors.

The district court noted that the release was ambiguous as to the parties' intent.[12] The release was open to an interpretation

that the $85,000 received by Dobbins should be offset against any recovery against Crain, or, alternatively, that Dobbins' recovery should be offset by an amount equal to the pro rata share of liability assessed to PLE. The district court construed the release as reducing Dobbins' recovery, but only to the extent of $85,000.[13] We have concluded that the district court erred in giving any effect to the release because of its express terms, but we nonetheless affirm its determination that the $85,000 received by Dobbins be offset against any recovery from Crain, since Dobbins should not be permitted to recover twice for the same injury.

As we stated in Part III of this opinion, *supra,* PLE is immune from any tort liability to its employee Dobbins. LHWCA § 5, 33 U.S.C. § 905. *See Halcyon v. Haenn Ship Ceiling and Refitting Co., supra.* That being so, the release by its terms cannot operate to reduce Dobbins' award. The release contemplates a reduction of Dobbins' recovery only "in the event [Crain] shall be found to be joint tortfeasors with [PLE]". Since PLE can *never* be a "joint tortfeasor" with respect to its employee Dobbins, the release provision can never come into effect.[14] *See Halcyon; Robin v. Sun Oil,* 548 F.2d 554 (5th Cir. 1977); *Brown v. American-Hawaiian S. S. Co.,* 211 F.2d 16 (3d Cir. 1954). *See also Jones v. Waterman S. S. Corp.,* 155 F.2d 992 (3d Cir. 1946).

However, if plaintiff is allowed to recover $240,000 in this case, he will have recovered twice for his injuries, at least to the extent

**11.** Since seamen are wards of the admiralty, courts watch over their contractual dealings with masters and owners. M. Norris, The Law of Seamen §§ 501–503 (3d ed. 1970); *Hardin v. Gordon,* Fed.Cas.No.6047 (C.C.Me.1823); *Garrett v. Moore-McCormack,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). Releases are therefore scrutinized to guard against any overreaching, misunderstanding, and inadequacy of consideration. *See generally* Norris, *supra,* §§ 501–516; 1B Benedict, *supra,* § 6.

**12.** We agree that the release must be governed by the intent of the parties, and we reject the argument that the effect of the release is governed by the old common law rule that the release of one alleged joint tortfeasor is the release of all. *See Cates v. United States,* 541 F.2d 411 (5th Cir. 1971); *Leach v. Mon River*

*Towing, Inc.,* 363 F.Supp. 637 (W.D.Pa.1973); 1B Benedict, *supra,* § 6 at 1–50 n. 5. *See also Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Aro Mfg. Co. v. Convertible Top Co.,* 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964); *Evans v. Marks,* 421 Pa. 146, 218 A.2d 802 (1966).

**13.** The court relied on the principle that ambiguity in a contract should be construed against the drafting party; the policies of the maritime law which protect seamen and longshoremen; and the policy against double recovery.

**14.** *See Robin v. Sun Oil,* 548 F.2d 554 (5th Cir. 1977) (distinguishing between "negligence" and "liability in damages" in an analogous context involving the LHWCA).

of $85,000. Assuming that the jury were to find that PLE had not breached its warranty of workmanlike performance, no indemnity would be paid to Crain by PLE, and Crain alone would be obliged to respond to Dobbins for the $240,000 verdict, which amount includes recompense for the very same injuries for which PLE paid Dobbins $85,000. In that situation, Dobbins would have received a double recovery in the amount of $85,000. On the other hand, if we assume that the jury were to find a breach of PLE's warranty, then PLE would be obliged to indemnify Crain in full for the $240,000 which Crain would have paid to Dobbins. In that situation, not only would Dobbins have recovered $85,000 twice, but, even more inequitably, PLE would have again been assessed that sum, even though it had previously paid that amount in settlement for the exact same injuries. Therefore, in either situation, we are satisfied that, in the exercise of our equitable powers, no barrier exists to our requiring that any amount which Dobbins was paid in settlement for the same injuries be credited to any award against Crain. There is no reason why Dobbins should be entitled to a double recovery.

We find support for limiting Dobbins to a single recovery in *Benedict on Admiralty:*

In *Halcyon,* however there was one matter which does not appear to have been considered and that is, if payments have been made, prior to the judgment by the negligent employer, can the shipowner disclaim liability in respect of the amount paid? The normal rule is that though there can be no claim for contribution between joint tortfeasors, any payment made by any one tortfeasor enures as payment of the joint and several liability, for the simple reason that, to that extent the damages are diminished. It would appear that in a case where both the shipowner and the employer are jointly negligent, though no action will be against the employer in his capacity as such, and though no contribution may be obtained, the Court in awarding damages may well look to the compensation already received by the employee from the employer in determining the damages payable by the shipowner. In such an event, as the employers' right of reimbursement is entirely an equitable right, any reimbursement will be subject to equitable regulation.

1A Benedict, *supra,* § 119 at 6–33. Our conclusion is bolstered by § 33(f) of the LHWCA, which evinces a clear policy against double recovery by the longshoremen.[15] *See also Billiot v. Seward Seacraft,* 382 F.2d 662 (5th Cir. 1967); *Loffland Bros. Co. v. Huckabee,* 373 F.2d 528 (5th Cir. 1967).

*Pope & Talbot v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), does not hold otherwise. In that case the stevedore had been making compensation payments to its injured employee. The vessel owner, sued by the longshoreman for unseaworthiness and negligence, argued that the judgment against it should be reduced by the amount of compensation payments, since the longshoreman's verdict included items of damages on account of which his employer had paid him compensation, and thus the longshoreman would have a double recovery. The Court rejected this argument on the ground that § 33 of the LHWCA, 33 U.S.C. § 933, has specific provisions to permit a

---

**15.** We emphasize that we are *not* applying the so-called "*Murray* credit" which would permit a 50% reduction of the judgment won by the employee against a third party, if his employer's negligence contributed to his injury. In the context of this case, Crain under the *Murray* credit would be credited with 50%, or perhaps, by way of *Reliable Transfer,* the percentage of PLE's *pro rata* share of fault [75%], of the plaintiff's recovery. *See Murray v. United States,* 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968); *Dawson v. Contractors Transport Corp.,* 151 U.S.App.D.C. 401, 467 F.2d 727 (1972); *Brkaric v. Star Iron & Steel Co.,* 409

F.Supp. 516 (E.D.N.Y.1976). The question of the availability of the "*Murray* credit" remains open in this Circuit, *Marant v. Farrell Lines,* 550 F.2d 142 (3d Cir. 1977), although the doctrine has been criticized in *Marant* and *Brown v. Ivarans Rederi A/S,* 545 F.2d 854, 858 n. 6 (3d Cir. 1976). *Murray* has been rejected in the maritime LHWCA context in *Shellman v. United States Lines, Inc.,* 528 F.2d 675 (4th Cir. 1975); *Dodge v. Mitsui Shintaku Ginko K. K. Tokyo,* 528 F.2d 669 (9th Cir. 1975); *Landon v. Lief Hoegh & Co., Inc.,* 521 F.2d 756 (2d Cir. 1975); *see Lucas v. "Brinkes" Schiffahrts Ges.,* 379 F.Supp. 759 (E.D.Pa.1974).

stevedore-employer to recoup his compensation payments out of any recovery from a third person. 346 U.S. at 412. The Court reasoned that to allow the shipowner to reduce his liability at the expense of the employer would frustrate the purpose of § 33 to protect employers who are subjected to absolute liability for compensation under the LHWCA.

In our case, however, PLE paid Dobbins $85,000 not as statutory compensation, but as a settlement in a Jones Act suit. Thus, PLE has no statutory right under § 33 to recoup the $85,000 out of any recovery by Dobbins from Crain. The policy evident in § 33 of protecting the employer from a double recovery by the longshoreman would be frustrated by a *failure* to offset against Dobbins' recovery the $85,000 paid by PLE.

We conclude, therefore, that while *Pope & Talbot* prevents any reduction of Dobbins' verdict against Crain by the $560 in statutory compensation paid by PLE, it does not prohibit a reduction by the $85,000 settlement payment. Indeed, such a result is especially compelling if PLE is eventually determined to be liable to Crain under *Ryan,* since a failure to offset in that situation would result, as we have previously indicated, in PLE paying $85,000 twice for the same injuries.[15a]

### V.

■ As a final matter, we reach Dobbins' argument that violations of various safety regulations excused any contributory negligence on his part. In *Blair v. United States Steel Corp.,* 312 F.Supp. 293 (W.D.Pa.1970), aff'd per curiam, 444 F.2d 1390 (3d Cir. 1971), the district court held that the rule of § 53 of the Federal Employers' Liability Act[16] should apply to bar any reduction of

damages because of contributory negligence in a suit for unseaworthiness by a longshoreman against his stevedore-employer as owner *pro hac vice* of the vessel on which he was injured (*see Reed v. The Yaka, supra*). This Court affirmed the district court judgment without expressly addressing the question. *Blair,* however, is not this case. *Blair* involved an action against an *employer.* Both § 53 of FELA and the Jones Act provide for liability by *employers.* In this case, however, Crain was not Dobbins' employer, and whatever the authority of *Blair* may be in this Circuit, we are here confronted with vastly different considerations.

We are not content to apply the FELA rule concerning contributory fault to actions against non-employers, at least where compliance with the violated regulations was the employer's responsibility. In this case, Dobbins complains that various OSHA regulations were violated. *See generally* 29 C.F.R. Part 1918. These regulations, dealing with safety conditions for longshoremen[17] were promulgated to carry out the purposes of § 41 of the LHWCA (*see* 29 C.F.R. § 1918.1), which provides for various safety measures to be taken by *employers* of longshoremen. Thus PLE had the primary duty—and in this case the only opportunity—to comply with these regulations. The district court did not err therefore in rejecting Dobbins' contention that he should not be charged with contributory fault.[18]

### VI.

Having concluded that the district court correctly reduced Dobbins' recovery by 25% due to his contributory fault (*see* Part V of this opinion, *supra*), and that Dobbins'

---

**15a.** Judge Adams agrees with the result reached here, but he would reach it by permitting a recoupment by PLE for the $85,000 paid by way of settlement, rather than by a direct deduction by Crain in the course of paying the judgment to Dobbins. *See Dodge v. Mitsui Shintaku Ginko K. K. Tokyo,* 528 F.2d 669 (9th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *The Etna,* 138 F.2d 37, 41 (3d Cir. 1943).

**16.** Section 3 of FELA, 45 U.S.C. § 53, provides that the defense of contributory fault does not

serve to mitigate damages when a safety statute or regulation is violated. It is incorporated into the Jones Act, 46 U.S.C. § 688.

**17.** Specifically, Dobbins points to various regulations concerning the condition of barge surfaces. *See* 29 C.F.R. §§ 1918.37, 1918.91(c).

**18.** PLE may ultimately be required to pay all of the damages claimed by Dobbins (by way of a *Ryan* indemnity). If so, Dobbins would argue that PLE is therefore in effect the true liable

judgment against Crain must be reduced by the $85,000 payment made to Dobbins by PLE under the settlement agreement (*see* Part IV of this opinion, *supra*), we will affirm the judgment in Dobbins' favor against Crain in the amount of $155,000.

However, having concluded that the district court erred by apportioning the damages between Crain and PLE, and that the issue of indemnity (discussed in Part III, *supra*) must be resolved by the jury, we will reverse and direct that so much of the judgment of December 13, 1976 as provides for contribution between Crain and PLE be vacated, and we will remand for further proceedings consistent with this opinion.

party, and that, as his employer, PLE is subject to the rule of § 53 of the FELA, which would absolve Dobbins from his contributory fault. That being so, Dobbins contends that even though Crain is the party against whom he technically obtained his judgment, in reality it will be PLE which will respond to that judgment. Hence, he argues that the same § 53 effect should be accorded his judgment against Crain, as it would have been had the judgment been entered directly against PLE. Thus, by this extended reasoning, he seeks to avoid a reduction of his judgment against Crain due to his contributory fault.

Assuming without deciding that the § 53 rule would be available against PLE, we are not persuaded that it is available against Crain.